**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **CORNELIUS MILNER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 3:07-cv-00152-WHA-SRW** |
| | ) |
| **TALLAPOOSA COUNTY JAIL, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Jimmy Abbett and Blake Jennings, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

Cornelius Jarmaine Milner was booked into the Tallapoosa County Jail on November 4, 2004 on charges of murder. (Exhibit A, Inmate File of Cornelius Jarmaine Milner.) This charge was later changed to capital murder. (Ex. A.) The Plaintiff fired a pistol into an occupied vehicle killing a man inside. (Ex. A.) The Plaintiff was a pretrial detainee at all times relevant to the allegations made the basis of the Plaintiff's Complaint. (Exhibit B, Affidavit of Blake Jennings[1], "Jennings Aff." ¶ 3.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendants violated his constitutional rights by housing him with an inmate who has the AIDS virus and by housing him with an inmate who suffers from a "staff infection." Plaintiff requests as his relief "I just don't want this to keep happening and end up fatal on somebody else's behalf in the future." (Plaintiff's Compl. p. 4.)

---

[1]Jennings has been employed by the Tallapoosa County Sheriff's Department since 1998. He served as an Investigator from 1998 until he became the jail administrator on March 19, 2005. He is a graduate of the Corrections Academy. (Ex. B, Jennings Aff. ¶ 2.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit C, Affidavit of Sheriff Jimmy Abbett[2], "Abbett Aff.," ¶ 4; Ex. B, Jennings Aff. ¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

I.    FACTS

Sheriff Jimmy Abbett has delegated the responsibility for the day-to-day functions of the Tallapoosa County Jail to Blake Jennings, the jail administrator. As Sheriff of Tallapoosa County, Sheriff Abbett is responsible for promulgating the policies governing the Tallapoosa County Jail. (Ex. C, Abbett Aff. ¶ 5.) Sheriff Abbett has no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint. (Ex. C, Abbett Aff. ¶ 3.)

A.    CONDITIONS OF CONFINEMENT CLAIMS

It is the policy of the Tallapoosa County Jail that sanitation and hygienic living conditions in the jail are maintained in an appropriate manner so as to provide a healthful environment. The jail administrator makes certain that the jail is checked on a daily basis for sanitation. The Tallapoosa County Jail is inspected by the State of Alabama Department of Corrections as well as the Tallapoosa County Health Department. Interim inspections are carried out by the jail staff at the direction of the jail administrator. The jail administrator has the jail cleaned on a daily basis using approved sanitary supplies. Inmates are allowed to request

---

[2] Jimmy Abbett is the duly elected Sheriff of Tallapoosa County, Alabama. He has served as sheriff since 1995. Prior to serving as sheriff, he retired from the Alabama Bureau of Investigation where he served as an Investigator. (Ex. C, Abbett Aff. ¶ 2.)

cleaning materials to clean their living quarters at any time of day. Inmates are given the opportunity to bathe daily and are instructed to bathe daily. (Exhibit D, Inmate Rules and Regulations Handbook p.2 and 3; Ex. B, Jennings Aff. ¶ 5.)

Nurse Cathy DuBose[3] performs a physical exam of each inmate shortly after they are brought into the Tallapoosa County Jail. As part of this exam a blood sample from the inmate is drawn which is tested for HIV/AIDS and syphilis. (Exhibit E, Affidavit of Cathy DuBose, "DuBose Aff.," ¶ 4.)

Inmates who are HIV-positive are not segregated within the Tallapoosa County Jail. HIV-positive inmates remain in an institution's general population as long as they do not require hospitalization. Tallapoosa County jail staff's emphasis on education, precautions, and the professional management of HIV-positive inmates has rendered isolation unnecessary. (Ex. B, Jennings Aff. ¶ 6; Ex. C, Abbett Aff. ¶ 6.)

AIDS is most typically transmitted from one person to another by way of sexual contact, blood transfusions, or the shared use of intravenous drug needles or tattooing needles. (Ex. E, DuBose Aff. ¶ 5.)

Tallapoosa County Jail policies and training stress that jail officers must respond to the presence of blood, semen, vaginal fluids, or any body fluids containing visible blood under the presumption that these fluids are contaminated. An inmate can have an HIV-positive roommate and not be at any risk of contracting the virus unless the inmates engage in high risk behavior. However, Tallapoosa County Jail rules prohibit the types of behavior that result in the transmission of the HIV virus, such as sexual contact between inmates and the sharing of any

---

[3] Cathy DuBose is a registered nurse. She provides medical services to the inmates at the Tallapoosa County Jail and has done so since January 25, 2005. Nurse DuBose earned her Nursing degree from Southern Union in 1990. Prior to working at the Jail, she was employed by Southern Care Hospice for two years as a RN Case Manager. Prior to that, she worked at Russell Medical Center for six years as a Staff Nurse RN. (Ex. E, DuBose Aff. ¶ 2.)

needles.  Those prisoners who follow the rules are not in any significant danger of contracting the disease.  Inmates who are HIV-positive and who are believed to put other inmates or employees at risk, because they display intentional behavior that could result in the spread of the virus, are administratively separated from those whom they place at risk.  (Ex. D, Inmate Rules and Regulations Handbook p.5, 6, 7 and 8; Ex. B, Jennings Aff. ¶ 7; Ex. C, Abbett Aff. ¶ 7.)

Inmates who are infected with a staph infection are not segregated within the Tallapoosa County Jail unless the infected inmate requires hospitalization.  Tallapoosa County jail staff's emphasis on education, precautions, and the professional management of inmates infected with staph has rendered isolation unnecessary.  (Ex. B, Jennings Aff. ¶ 8; Ex. C, Abbett Aff. ¶ 8.)

Staph infections are caused by very common bacteria that many people have living on their skin all the time.  It can enter the body through an open cut or break in the skin and cause an infection.  Once a person has the bacteria responsible for a staph infection inside their body, the bacteria never goes away. However, the symptoms of a staph infection come and go with the treatment of antibiotics.  Staph infections tend to be minor skin infections that are pus-producing. (Ex. E, DuBose Aff. ¶ 6.)

The chances are low of an inmate contracting a staph infection from a cellmate infected with the bacteria responsible for causing a staph infection.  In order to contract a staph infection from an infected person, the uninfected inmate would have to have an area of broken skin make direct contact with the infected area on the infected inmate.  A staph infection is not an airborne disease.  (Ex. E, DuBose Aff. ¶ 7.)

Inmates at the Tallapoosa County Jail who are infected with a staph infection receive appropriate medical treatment from the jail medical staff.  If an inmate is diagnosed with a staph infection, the inmate would receive dressings and bandages to cover the wound and would be placed on an antibiotic until the infection cleared up.  (Ex. E, DuBose Aff. ¶ 8.)

Inmates at the Tallapoosa County Jail who are infected with a staph infection receive appropriate medical treatment from the jail medical staff.  An inmate can share a cell with an inmate with a staph infection and not be at any great risk of contracting the infection unless the inmates engage in high risk behavior.  However, Tallapoosa County Jail rules prohibit the types of behavior that would make an uninfected inmate at risk of contracting a staph infection.  Those prisoners who follow the rules are not in any significant danger of contracting the disease.  Inmates who are exhibiting symptoms of a staph infection and who are believed to put other inmates or employees at risk, because they display intentional behavior that could result in the spread of the bacteria, are administratively separated from those whom they place at risk.  (Ex. D, Inmate Rules and Regulations Handbook p.5, 6, 7 and 8; Ex. B, Jennings Aff. ¶ 9; Ex. C, Abbett Aff. ¶ 9.).

It is the policy of the Tallapoosa County Jail that access to appropriate health care services are provided for the inmates of the Jail for their physical and emotional well-being.  (Ex. B, Jennings Aff. ¶ 12; Ex. C, Abbett Aff. ¶ 12.)

The Jail employs a registered nurse, Nurse Cathy DuBose, who is on duty from 8:00 a.m. until 5:00 p.m. on Mondays through Fridays.  She is on call at all times of the day and night. The Jail also employs an LPN who works approximately thirty hours a week at the jail caring for the inmates.  Robert Schuster, M.D., also comes to the Tallapoosa County Jail once a week to see inmates who are referred to him by the nursing staff.  (Ex. B, Jennings Aff. ¶ 13; Ex. C, Abbett Aff. ¶ 13.)

An inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired.  The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained. (Ex. B, Jennings Aff. ¶ 14; Ex. C, Abbett Aff. ¶ 14.)

Except in the case of an emergency, each inmate requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate. In the event of a medical emergency, or a perceived medical emergency, the shift supervisor arranges for medical services without delay. All medical appointments, including appointments with the jail nurse, are logged by the jail staff in the inmate log. (Ex. B, Jennings Aff. ¶ 15; Ex. C, Abbett Aff. ¶ 15.)

Inmates are given prescription medication as prescribed. Medication is distributed according to instructions from the prescribing physician and is distributed by a jail staff member as directed by the jail nurse. Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care. (Ex. B, Jennings Aff. ¶ 16; Ex. C, Abbett Aff. ¶ 16.)

Plaintiff has never requested medical care due to his fear of having contracted the AIDS virus or a staph infection. (Ex. E, DuBose Aff. ¶ 9.)

### D.    GRIEVANCE PROCEDURES.

Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. Each inmate is given an Inmate Rules and Regulations Handbook when they are booked into the jail. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Tallapoosa County Jail policy requires that an inmate receive a response to any grievance submitted within a reasonable amount of time. Any officer receiving a grievance form is to pass the grievance on to either the jail administrator or the lieutenant for appropriate handling. This decision may be appealed by the inmate in writing to the chief deputy

6

within seventy-two hours of receipt of the grievance decision.  The inmate may appeal the chief deputy's decision in writing to the sheriff within seventy-two hours of the receipt of the chief deputy's decision.  The decision of the sheriff is final.  A copy of any grievance form which is filed by an inmate is to be placed in the inmate's Inmate File.  (Ex. D, Inmate Rules and Regulations Handbook p.20; Ex. B, Jennings Aff. ¶ 10; Ex. C, Abbett Aff. ¶ 10.)

Upon Jail Administrator Jennings' review of the Plaintiff's inmate file, there is no grievance filed regarding the incident or conditions made the basis of his Complaint.  (Ex. B, Jennings Aff. ¶ 11.)  Further, neither Sheriff Abbett, Administrator Jennings, nor Nurse DuBose have received a grievance from the Plaintiff regarding the incident or conditions made the basis of his Complaint. (Ex. B, Jennings Aff. ¶ 11; Ex. C, Abbett Aff. ¶ 11; Ex. E, DuBose Aff. ¶ 10.)  Sheriff Abbett and Administrator Jennings have never received an appeal of any grievance from the Plaintiff.  (Ex. B, Jennings Aff. ¶ 11; Ex. C, Abbett Aff. ¶ 11.)

Sheriff Abbett and Administrator Jennings have complied with all policies and procedures of the Tallapoosa County Jail.  They are not aware of nor have they authorized or allowed any deviation from said policies and procedures.  (Ex. C, Abbett Aff. ¶ 17; Ex. B, Jennings Aff. ¶ 18.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official

capacity is entitled to Eleventh Amendment immunity); <u>Carr v. City of Florence, Ala.</u>, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983, and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  <u>Id.</u>; <u>Carr</u>, 916 F.2d at 1525 n.3 (11th Cir. 1990).

**B.      Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.      Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Jail.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  <u>See</u> <u>Brown v. Tombs</u>, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Despite the availability of a grievance procedure at the Tallapoosa County Jail, Plaintiff did not file a grievance with the Tallapoosa County Jail.  Although Plaintiff alleged that he filed a

grievance regarding a cellmate with a staph infection, there is no such grievance in Plaintiff's Inmate File.  Also, Plaintiff has failed to appeal any grievance to Administrator Jennings and Sheriff Abbett.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Tallapoosa County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies). [4]

---

[4] See Terry Shane Williams v. Cecil Reed, et al., United States District Court for the Northern District of Alabama, Middle Division, No. CV-99-BU-2938-M, slip op. at 3-4 (N.D. Ala. August 15, 2000) (adopted by district judge September 21, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Richard Dale Woodham v. Bill Lands, United States District Court for the Northern District of Alabama, Middle Division, No. CV-00-AR-0170-M, slip op. at 4-5 (N.D. Ala. November 7, 2000) (adopted by district judge December 4, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Quinton M. Johnson v. Sgt. Robinson, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-616-E, slip op. at 3-5 (M.D. Ala. January 12, 2001) (adopted by district judge January 31, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); David Wilson Bell, Sr. v. Tina Riley, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-731-E, slip op. at 4-5 (M.D. Ala. February 21, 2001) (adopted by district judge March 20, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); Mitchell Tallapoosa Hicks v. Jack Day, et al., Circuit Court of Clarke County, Alabama, No. CV-00-280M, slip op. 1-3 (March 21, 2001) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); But see, Garner v. Weeks, No. 00-14582 (11th Cir. April 10, 2001).

> **2.     Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff demonstrate that he suffered physical injury before instituting a complaint based upon jail conditions.  The PLRA states the following concerning physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.  42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e) requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the injuries do not have to be significant.  <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11th Cir.), vacated, 197 F.3d (11th Cir. 1999), reinstated in relevant part, <u>Harris v. Garner</u>, 216 F.3d 970 (11th Cir. 2000) (en banc).  In the present action, Plaintiff does not allege that he has suffered any physical injury as a result of the allegations described in his Complaint.  <u>See</u> Plaintiff's Complaint.  As a result, the case is due to be dismissed pursuant to 42 U.S.C § 1997e(e).

> **C.     Alternatively, Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and Jail Administrator of Tallapoosa County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  <u>See, e.g.</u> <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the

10

facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, arguendo, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the

11

unlawfulness must have been apparent." <u>Willingham</u>, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." <u>Storck</u>, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:    (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); <u>Wilson v. Seiter</u>, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); <u>Williams v. Bennett</u>, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. <u>Wilson v. Seiter</u>, 502 U.S. at 290. In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

### 1.    Objective Component

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations are required to make out a conditions-of-confinement claim*" under the Eighth Amendment.[5] <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). "[T]he Constitution does

---

[5] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'" <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

not mandate comfortable prisons." <u>Chandler</u>, 379 F.3d. at 1289.  In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

Plaintiff complains of being incarcerated with a cellmate who has the HIV virus and with a cellmate who suffers from a staph infection.  (Plaintiff's Compl. p. 2-3.)  However, inmates have no constitutional right to a housing assignment of his or her choice.  See <u>Meachem v. Fano</u>, 427 U.S. 215 (1976).  Plaintiff has not been deprived of any basic need.  Plaintiff does not assert that any inmate has taken any action which would expose him to the HIV virus or to a staph infection. Plaintiff has not made any allegation that he has contracted the HIV virus or a staph infection. Plaintiff presents no facts evidencing that being housed with a cellmate with the AIDS virus or a staph infection constitutes deliberate indifference and has failed to allege an extreme deprivation. See <u>Johnson v. U.S.</u>, 816 F. Supp. 1519 (N.D. Ala. 1993) (holding no constitutional violation where plaintiff was housed in cell with an inmate dying from AIDS); <u>Davis v. Stanley,</u> 740 F. Supp. 815, 819 (N.D. Ala. 1987) (holding failure to screen inmate for AIDS virus did not sate constitutional violation); <u>Jarrett v. Faulkner</u>, 662 F. Supp. 928 (S.D. Ind. 1987) (finding risk of contracting AIDS from another inmate was not so great as to implicate constitutional rights); <u>McBride v. Strength</u>, 2006 WL 2949354 (S.D. Ga., Nov. 16, 2006) (holding inmate's claim that overcrowding caused staff infections did not state a constitutional violation as inmate did not claim that he contracted a staff infection in the jail); <u>Segler v. Prisoner Transport Serv.</u>, 2006 WL 2037196 (S.D. Ill., July 18, 2006) (plaintiff's vague allegations regarding a staph infection do not rise to the level of a constitutional violation).

Clearly, the Plaintiff's conditions of confinement are not extreme as would form a constitutional violation.

## 2.    Subjective Component

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Court equates the level of culpable intent required to the standard employed in the context of criminal recklessness prosecutions. Id. at 837-839. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536. Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. Porter v. Nussle, 534 U.S. 516, 528 (U.S. 2002).

Plaintiff cannot show that Defendants have been deliberately indifferent with regard to the conditions of confinement at the Tallapoosa County Jail. Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any actions of the Defendants constituted cruel and

unusual punishment. In this case, none of the conditions of which Plaintiff complains constitutes an excessive risk to his health or safety. Plaintiff has not shown how he has been injured as a result of any of his allegations. Furthermore, the Plaintiff has not presented sufficient evidence to show that any impairment to his physical or mental condition actually resulted from the aforementioned environment. In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not sufficiently alleged that any of the Defendants knew of or disregarded that risk. There are no request slips in the Plaintiff's file regarding his allegations of the conditions of his confinement. The Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions. Significantly, Plaintiff has failed to allege that he suffered any injury as a result of the conditions of his confinement.

Based on the foregoing, it is clear that the Defendants did not violate Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, the Defendants are entitled to qualified immunity. Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, *supra*, his conditions of confinement claims are due to be dismissed.

**D.      Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Defendants were in any way personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation

demonstrating that these named Defendants were in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts to show that Defendants personally participated in his claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights. As such, all Plaintiff's claims are due to be dismissed.

### E.    To the extent that any claims against the Defendants are based on the theory of *respondeat superior*, such claims must fail.

To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

### F.    Plaintiff's Request for Relief Fails

Plaintiff fails to request relief that can by granted by this Court. Thus, this Court lacks jurisdiction over Plaintiff's claims. Dismissal is appropriate if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. When a plaintiff completely fails to request relief that can be granted from the alleged constitutional violations, it necessarily appears that the plaintiff can prove no set of facts that would entitle him to relief. See Hassell v. U.S., 2006 WL 1418612 *2 (Fed. Cl. 2006) (dismissing pro se complaint as plaintiff's complaint fails to request relief that court had jurisdiction to offer).

### G.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material

facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[6] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Respectfully submitted this 14th day of May, 2007.

**s/Ashley Hawkins Freeman**
ASHLEY HAWKINS FREEMAN Bar No.  FRE044
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  afreeman@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the **14th** day of **May, 2007**, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Cornelius Milner
Tallapoosa County Jail
316 Industrial Park Drive
Dadeville, AL  36853

**s/Ashley Hawkins Freeman**
OF COUNSEL

# Exhibit A
# Inmate File of Cornelius Jarmaine Milner



# TALLAPOOSA COUNTY JAIL
# COURT ACTION/ARREST
# AUTHENTICATION

This form is to be completed by the transporting officer anytime an inmate makes a court appearance or placed in jail without an arrest report. Correctional Officers shall complete when information is given via telephone, mail or other means concerning sentencing, bonds or other court actions.

DATE: _10-11-06_

NAME OF PRISONER: _Cornelius Milner_    NID#: _____

JUDGE: _Martin_    CASE # (IF KNOWN) _____

CHARGE(S): _Arraignment_

**COURT ACTION/REMARKS: CHECK ALL THAT APPLY**

_____ 1. BOUND TO GRAND JURY

_____ 2. BOND REMAINS THE SAME

_____ 3. BOND SET AT: _____

_____ 4. PURGE AMOUNT SET AT: _____

_____ 5. RELEASED TIME SERVED BY ORDER OF JUDGE

_____ 6. RELEASED ON PROBATION BY ORDER OF JUDGE

_____ 7. CASE CONTINUED; DATE: _____

_____ 8. INMATE SENTENCED TO: _____

_____ 9. APPOINTED ATTORNEY: _____

_____ 10.COURT ORDERED HOLDS FOR: _____

**ADDITIONAL REMARKS:**
_Waved – Plead Not Guilty by reason of Mental Defect_

_____

_Sgt Ray Armstr__

BOOKING OFFICER    OFFICER COMPLETING FORM



# TALLAPOOSA COUNTY JAIL
# COURT ACTION/ARREST
# AUTHENTICATION

This form is to be completed by the transporting officer anytime an inmate makes a court appearance or placed in jail without an arrest report. Correctional Officers shall complete when information is given via telephone, mail or other means concerning sentencing, bonds or other court actions.

DATE: _11-1-05_

NAME OF PRISONER: _Cornelius Milner_    NID#: _____

JUDGE: _Bryan_    CASE #: (IF KNOWN) _____

CHARGE(S): _Capital Murder_

**COURT ACTION/REMARKS: CHECK ALL THAT APPLY**

_____ 1. BOUND TO GRAND JURY

_____ 2. BOND REMAINS THE SAME

_____ 3. BOND SET AT: _____

_____ 4. PURGE AMOUNT SET AT: _____

_____ 5. RELEASED TIME SERVED BY ORDER OF JUDGE

_____ 6. RELEASED ON PROBATION BY ORDER OF JUDGE

_____ 7. CASE CONTINUED; DATE: _____

_____ 8. INMATE SENTENCED TO: _____

_____ 9. APPOINTED ATTORNEY: _____

_____ 10. COURT ORDERED HOLDS FOR: _____

ADDITIONAL REMARKS:

_Pleas Not Guilty at Arraignment_

_____                    _Sgt. Ray Pennington_

**BOOKING OFFICER**                **OFFICER COMPLETING FORM**



# TALLAPOOSA COUNTY JAIL
# COURT ACTION/ARREST
# AUTHENTICATION

This form is to be completed by the transporting officer anytime an inmate makes a court appearance or placed in jail without an arrest report. Correctional Officers shall complete when information is given via telephone, mail or other means concerning sentencing, bonds or other court actions.

DATE: _1-13-05_____

NAME OF PRISONER: _Cornelius Milner_____ NID#: _____

JUDGE: _Taylor_____ CASE #: (IF KNOWN) _____

CHARGE(S): _Capital Murder_____

**COURT ACTION/REMARKS: CHECK ALL THAT APPLY**

_X_ 1. BOUND TO GRAND JURY

____ 2. BOND REMAINS THE SAME

____ 3. BOND SET AT: _____

____ 4. PURGE AMOUNT SET AT: _____

____ 5. RELEASED TIME SERVED BY ORDER OF JUDGE

____ 6. RELEASED ON PROBATION BY ORDER OF JUDGE

____ 7. CASE CONTINUED; DATE: _____

____ 8. INMATE SENTENCED TO: _____

____ 9. APPOINTED ATTORNEY: _____

____ 10. COURT ORDERED HOLDS FOR: _____

ADDITIONAL REMARKS:
_Bond Remain The Same_____

_____

_William Brown_____

**BOOKING OFFICER**                    **OFFICER COMPLETING FORM**



# TALLAPOOSA COUNTY JAIL
# COURT ACTION/ARREST
# AUTHENTICATION

This form is to be completed by the transporting officer anytime an inmate makes a court appearance or placed in jail without an arrest report.  Correctional Officers shall complete when information is given via telephone, mail or other means concerning sentencing, bonds or other court actions.

DATE: _12-20-04_

NAME OF PRISONER: _Milner  Cornelius_  NID#: _____

JUDGE: _Taylor_____  CASE #: (IF KNOWN) _____

CHARGE(S): _Cap Murder_____

**COURT ACTION/REMARKS: CHECK ALL THAT APPLY**

_X_ 1. BOUND TO GRAND JURY

____ 2. BOND REMAINS THE SAME

____ 3. BOND SET AT: _____

____ 4. PURGE AMOUNT SET AT: _____

____ 5. RELEASED TIME SERVED BY ORDER OF JUDGE

____ 6. RELEASED ON PROBATION BY ORDER OF JUDGE

____ 7. CASE CONTINUED; DATE: _____

____ 8. INMATE SENTENCED TO: _____

____ 9. APPOINTED ATTORNEY: _____

____ 10.COURT ORDERED HOLDS FOR: _____

ADDITIONAL REMARKS: _____

_____

_____

_____

_____        _____

**BOOKING OFFICER**                **OFFICER COMPLETING FORM**

# Dadeville Police Department
## ALABAMA UNIFORM ARREST REPORT
### Investigations

Lt. David E. Barbour, ID# 305

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI # | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| AL0620200 | Dadeville Police Department, Dadeville Alabama | DP0410114 | |

## IDENTIFICATION

| 5 LAST, FIRST, MIDDLE NAME | 6 ALIAS AKA |
|---|---|
| Milner, Cornelius Jarmaine | Jarmain, Cornil, |

| 7 FBI # | 8 SEX ☒ M 1 ☐ F 2 | 9 RACE ☐ W 1 ☒ B 2 ☐ 3 A 4 | 9 HGT. 5'10" | 10 WGT. 160 | 11 EYE BRO | 12 HAIR BLK | 13 SKIN MED | 14 | ☐ 1 SCARS | ☐ 2 MARKS | ☒ 3 TATTOOS | ☐ 4 AMPUTATIONS |

| 5 PLACE OF BIRTH (CITY, COUNTY, STATE) | 15 SSN | 17 DATE OF BIRTH | 18 Age 23 | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|
| Fayetteville N.C. | | | | ID# |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST NC |
|---|---|---|---|---|---|---|---|---|---|
| NC0724312A | | | | | | | | | |

| 24 FBI | HENRY CLASS | | | | | | 25 IDENTIFICATION COMMENTS |
|---|---|---|---|---|---|---|---|
| 694906EB4 | NCIC CLASS | | | | | | Multiple Tattoos and Scars |

| 26 ☐ RESIDENT ☒ NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) 3008 Friendly Heights Blvd. Decatur GA. 30035 | 28 RESIDENCE PHONE ,678, 760-0932 | 29 OCCUPATION (BE SPECIFIC) Unemployed |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) N/A | 31 BUSINESS ADDRESS ( STREET, CITY, STATE) | 32 BUSINESS PHONE ( ) |
|---|---|---|

## ARREST F1

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) Tallapoosa County Jail Dadeville AL. 36853 | 34 SECTOR 3 0 3 | 35 ARRESTED FOR YOUR JURISDICTION ☒ IN STATE ☐ OUT OF STATE | ☒ YES ☐ NO |
|---|---|---|---|

| 36 CONDITION OF ARRESTEE ☐ DRUNK ☒ SOBER ☐ DRINKING ☐ DRUGS | 37 RESIST ARREST? ☐ YES ☒ NO | 38 Injuries? ☒ 1 NONE ☐ 2 OFFICER ☐ 3 ARRESTEE | 39 ARMED? ☐ Y ☒ N | 40 DESCRIPTION OF WEAPON ☐ 1 HANDGUN ☐ 2 RIFLE ☐ 3 SHOTGUN ☐ 4 OTHER FIREARM ☐ 5 OTHER WEAPON |
|---|---|---|---|---|

| 41 DATE OF ARREST 1 1 2 3 0 4 | 42 TIME OF ARREST 1500 ☒ 1. AM ☐ 3. MIL ☐ 2. PM | 43 DAY OF ARREST S M ☒ W T F S | 44 TYPE ARREST ☒ ON VIEW ☐ CALL ☐ WARRANT | 45 ARRESTED BEFORE? ☒ YES ☐ NO ☐ UNKNOWN | 49 UCR CODE |
|---|---|---|---|---|---|

| 46 CHARGE—1 ☒ FEL ☐ MISD "Capital" Murder | 47 UCR CODE 0905 | 48 CHARGE—2 ☐ FEL ☐ MISD N/A | 53 DATE ISSUED |
|---|---|---|---|

| 50 STATE CODE/LOCAL ORDINANCE 13A-6-2 (A-3) / 404 | 51 WARRANT # WR-2004-949 | 52 DATE ISSUED 1 1 2 3 0 4 | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # | M D Y |
|---|---|---|---|---|---|

| 56 CHARGE—3 ☐ FEL ☐ MISD | 57 UCR CODE | 58 CHARGE—4 ☐ FEL ☐ MISD N/A | 59 UCR CODE |
|---|---|---|---|

| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT | 62 DATE ISSUED M D Y | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT # | 65 DATE ISSUED M D Y |
|---|---|---|---|---|---|

| 66 ARREST DISPOSITION ☒ HELD ☐ BAIL ☐ RELEASED | 67 IF OUT ON RELEASE WHAT TYPE? ☐ Other LEO ☐ OTHER N/A | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) N/A |
|---|---|---|
| | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) N/A |

## VEHICLE

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO TOP BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|
| 71 VIN | | | | 79 IMPOUNDED? ☐ YES ☐ NO | 80 STORAGE LOCATION/IMPOUND # | | |

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED N/A | ☐ CONTINUED IN NARRATIVE |
|---|---|

## JUVENILE

| 82 JUVENILE DISPOSITION: ☐ HANDLED AND RELEASED ☐ REF. TO JUVENILE COURT | ☐ REF TO WELFARE AGENCY ☐ REF TO OTHER POLICE AGENCY | ☐ REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|---|---|

| 84 PARENT OR GUARDIAN (LAST FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE ( ) |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE ( ) |
|---|---|---|---|

| 91 DATE AND TIME OF RELEASE M D Y ☐ 1. AM ☐ 3. MIL ☐ 1. PM | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID # |
|---|---|---|---|

| 95 RELEASED TO | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS | |
|---|---|---|---|

## ARREST F2

| 98 PERSONAL PROPERTY RELEASED TO ARRESTED ☐ YES ☐ NO ☐ PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY |
|---|---|---|
| N/A | | |

**Arrest F 2 = Additional Charges**

LOCAL USE
S T A T E

STATE USE
CASE

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER | 109 SFX | 110 ADDITIONAL CASES CLOSED ☐ Y ☐ N |
|---|---|---|---|

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | | |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M) Barbour, David E., Lt. / Inv. | 112 ID# 305 | 113 ARRESTING OFFICER (LAST, FIRST, M) | 114 ID # | 115 SUPERVISOR ID # | 116 WATCH CMDR ID # 305 |
|---|---|---|---|---|---|

**ADDITIONAL ARREST NARRATIVE CONTINUED**

117 DAYS AND TIME OF ARREST  1 1 2 3 0 4   1500

N
A
R
R
A
T
I
V
E

**120 ADDITIONAL ARREST INFORMATION**

Due to new evidence that came up in the case the charge of Felony Murder will be upgraded to Capital Murder.

AGENCY NUMBER:

WARRANT NUMBER: WR 2004 000949.00
OTHER CASE NBR:

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY COMMANDED TO ARREST     CORNELIUS JARMAINE MILNER    AND BRING
HIM/HER BEFORE THE DISTRICT COURT OF TALLAPOOSA COUNTY TO ANSWER THE STATE
ON A CHARGE(S) OF:
          MURDER CAPITAL   CLASS: A  TYPE: F  COUNTS: 001
AND HAVE YOU THEN AND THERE THIS WRIT WITH YOUR RETURN  THEREON.

YOU WILL RECEIVE UNTO YOUR CUSTODY AND DETAIN HIM/HER UNTIL THE
_____ DAY OF _____ _____, OR UNTIL LEGALLY DISCHARGED.

DATED THIS 23 DAY OF NOVEMBER, 2004.

BOND SET AT: (1) _____  BOND TYPE:
             (2) _____
             (3) _____

_____Eva Harrover_____ DISTRICT  COURT
JUDGE/CLERK/MAGISTRATE OF DISTRICT  COURT

----------------------------------------------------
CHARGES: MURDER CAPITAL       13A-005-040           F  FELONY
----------------------------------------------------

NAME: CORNELIUS JARMAINE MILNER      ALIAS:
ADDRESS: 3008 FRIENDLY HEIGHTS BLV   ALIAS:
ADDRESS:
CITY: DECATUR           STATE: GA     ZIP: 00000 0000
                                      PHONE: 000 000 0000 EXT: 000

EMPLOYMENT:
DOB: ▓▓▓▓▓▓       RACE: B   SEX: M   HAIR:
EYE:     HEIGHT: 0'00"  WEIGHT: 000
SID: 000000000  SSN: ▓▓▓▓▓▓   DL NUM: ▓▓▓▓▓

----------------------------------------------------
              E X E C U T I O N

     EXECUTED THE WITHIN WARRANT BY ARRESTING THE DEFENDANT AND
     (✓)  PLACING DEFENDANT IN THE TALLAPOOSA COUNTY JAIL

     ( )  RELEASING DEFENDANT ON APPEARANCE BOND

-------------------------------------------
-------------------------------------------
THIS _____23_____ DAY OF __November_____ 2004___

                              _____
                              SHERIFF

                              _____
                              BY

----------------------------------------------------
COMPLAINANT:   INV D E BARBOUR
               DADEVILLE POLICE DEPT

               DADEVILLE  AL  36853

OPERATOR: MAY      DATE: 11/23/2004

AGENCY NUMBER:

WARRANT NUMBER: WR 2004 000949.00
OTHER CASE NBR:

### C O M P L A I N T

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT  COURT OF
TALLAPOOSA COUNTY, ALABAMA, PERSONALLY APPEARED    INV D E BARBOUR
WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR
BELIEVING, AND DOES BELIEVE THAT    CORNELIUS JARMAINE MILNER    DEFENDANT,
WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE
NAMED COUNTY AND

ON 10-24-04 CORNELIUS JARMAINE MILNER DID CAUSE THE DEATH OF
COURTNEY C RUSSELL BY SHOOTING INTO AN OCCUPIED VEHICLE WITH A 380MM
AUTOMATIC PISTOL WITH THE INTENT TO ROB THE VICTIM, TO-WIT: COURTNEY
C RUSSELL
IN VIOLATION OF 13A-005-040                        OF THE CODE OF ALABAMA,
AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

                              _____
                              COMPLAINANT'S SIGNATURE

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 23 DAY OF NOVEMBER, 2004.

_____
JUDGE/CLERK/MAGISTRATE OF DISTRICT COURT

CHARGES: MURDER CAPITAL      13A-005-040              F  FELONY

WITNESS FOR THE STATE

INV D E BARBOUR/DADEVILLE POLICE DEPT/DADEVILLE/36853

OPERATOR: MAY    DATE: 11/23/2004



*Lt. David E. Barbour*
Investigator

# The District Court of Tallapoosa County Alabama

Warrant Number: WR04-799
Case Number: <u>DP0410114</u>

## District Court Affidavit

**Offense: <u>Capital Murder</u> (Upgrade from Felony Murder)**
**Defendant's Name: Cornelius Jarmaine Milner**
Defendant's Address: 3008 Friendly Heights. Blvd. Decatur Georgia
          103 Ramsey Drive Jacksonville North Carolina
Defendant's D.O.B: ███████, Age: 23, Sex: M, Race: B, S.S.#: ████████
DL# ███████N.C. GA ID Card███████, Phone Number: 678-760-0932
Employment: Unemployed
Date and time of occurrence: 10/24/2004 @ 1830-1847
Place of occurrence: Woodyard Street Area
How attacked? Firearm
Damage done or property attacked: Death of Courtney C. Russell age 21
Value of property:
Details of the offence: On said date and around said times the offender did cause the death of Courtney C. Russell by shooting into an occupied vehicle with a 380mm automatic pistol. This was determined by new evidence and statements by witnesses that Cornelius J. Milner did shot into an occupied vehicle with the intent to rob the victim causing the death of the victim. I make this affidavit for the purpose of securing a warrant against the said: <u>Cornelous Jarmain Milner</u>, I understand that I am instituting a criminal proceeding and cannot drop this case. I further understand that if any of the foregoing facts are untrue, I may, in addition to any other punishment provided by law, be taxed with court cost in this proceeding.
Sworn to and subscribed before me this: 23nd

Day of: November, Year of: 2004          _____
                                              (Complainant)
_____
   (Judge / Clerk / Magistrate)            _____
                                               (Address)

                                           _____
                                             (Phone Number)

Witness: _____
          (Name)              (Address)          (Phone Number)
Inv. D.E.Barbour, C/O Dadeville Police Dept. Dadeville Al. 36853,     256-825-6212
Officer James C. Johnson,
Officer Jimmy Burdon,
Officer Brian Fielders,
Sgt. W. D. Traylor,
Jermie O. Greathouse, 16482 Hwy. 50 Camp Hill AL. 36850, Phone: 256-896-4394
Jacory O. Greathouse, 16482 Hwy. 50 Camp Hill AL. 36850, Phone: 256-896-4394
                                                        Page 1 of 1

                                                              DEB 305



# TALLAPOOSA COUNTY JAIL
# COURT ACTION/ARREST
# AUTHENTICATION

*This form is to be completed by the transporting officer anytime an inmate makes a court appearance or placed in jail without an arrest report. Correctional Officers shall complete when information is given via telephone, mail or other means concerning sentencing, bonds or other court actions.*

**DATE:** 11-5-04

**NAME OF PRISONER:** Cornelius Milner **NID#:** 410

**JUDGE:** Capital Murder Taylor    **CASE #: (IF KNOWN)** _____

**CHARGE(S):** Capital Murder

**COURT ACTION/REMARKS: CHECK ALL THAT APPLY**

_____ 1. BOUND TO GRAND JURY

_____ 2. BOND REMAINS THE SAME

__X__ 3. BOND SET AT: NONE

_____ 4. PURGE AMOUNT SET AT: _____

_____ 5. RELEASED TIME SERVED BY ORDER OF JUDGE

_____ 6. RELEASED ON PROBATION BY ORDER OF JUDGE

_____ 7. CASE CONTINUED; DATE: _____

_____ 8. INMATE SENTENCED TO: _____

__X__ 9. APPOINTED ATTORNEY: Charles Gillenwaters

_____ 10. COURT ORDERED HOLDS FOR: _____

**ADDITIONAL REMARKS:** _____

_____

_Flowers_

**BOOKING OFFICER**                    **OFFICER COMPLETING FORM**

## ALABAMA UNIFORM  ARREST REPORT

| | Finger Printed | Photo Completed |
|---|---|---|
| | ☒ Yes | ☒ Yes |
| | ☐ No | ☐ No |

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

### IDENTIFICATION

| 1 ORI # | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| AL0620200 | **Dadeville Police Department, Dadeville Alabama** | D P 0 4 1 0 1 1 4 | |

| 5 LAST, FIRST, MIDDLE NAME | 6 ALIAS AKA |
|---|---|
| Milner, Cornelius, Jermaine, | None |

| 7 SEX | 8 RACE | 9 HGT. | 10 WGT. | 11 EYE | 12 HAIR | 13 SKIN | 14 | |
|---|---|---|---|---|---|---|---|---|
| ☒ M ☐ F | ☒ 1 W ☐ 3 A ☐ 2 B ☐ 4 I | 510 | 160 | Bro | Blk | Med | ☐ 1 SCARS ☐ 2 MARKS ☒ 3 TATTOOS ☐ 4 AMPUTATIONS | |

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 15 SSN | 17 DATE OF BIRTH | 18 Age | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|
| Fayetteville, North Carolina | | 23 | I.D. |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|
| | HENRY CLASS | | | | | | | | GA |
| 24 FBI # | NCIC CLASS | | | | | | | 25 IDENTIFICATION COMMENTS | |
| 694906EB4 | | | | | | | | Multiple Tattoos and Scars | |

| 26 ☒ RESIDENT ☐ NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) | 28 RESIDENCE PHONE | 29 OCCUPATION (BE SPECIFIC) |
|---|---|---|---|
| | 3008 Friendly Heights Boulevard Decatur, Georgia 30035 | , 678, 760-0932 | Unemployed |

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) | 31 BUSINESS ADDRESS ( STREET, CITY, STATE) | 32 BUSINESS PHONE |
|---|---|---|
| N/A | N/A | , N/A , N/A |

### ARREST

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) | 34 SECTOR | 35 ARRESTED FOR YOUR JURISDICTION |
|---|---|---|
| Dadeville Police Department 192 S. Broadnax Street Dadeville, Alabama 36853 | 1 0 4 | ☒ IN STATE ☐ OUT STATE AGENCY ☒ YES ☐ NO |

| 36 CONDITION OF ARRESTEE | 37 RESIST ARREST? | 38 Injuries? | 39 ARMED? | 40 DESCRIPTION OF WEAPON |
|---|---|---|---|---|
| ☐ DRUNK ☒ SOBER ☐ DRINKING ☐ DRUGS | ☐ YES ☒ NO | ☒ 1 NONE ☐ 2 OFFICER ☐ 3 ARRESTEE | ☐ Y ☒ N | ☐ 1 HANDGUN ☐ 2 RIFLE ☐ 3 SHOTGUN ☐ 4 OTHER FIREARM ☐ 5 OTHER WEAPON |

| 41 DATE OF ARREST | 42 TIME OF ARREST | 43 DAY OF ARREST | 44 TYPE ARREST | 45 ARRESTED BEFORE? |
|---|---|---|---|---|
| 1 1 0 4 0 4 | 1600 ☐ 1. AM ☒ 3. MIL ☐ 2. PM | S M T W X F S | ☐ 1. ON VIEW ☐ 2. CALL ☒ 3. WARRANT | ☒ YES ☐ NO ☐ UNKNOWN |

| 46 CHARGE—1 ☒ FEL ☐ MISD | 47 UCR CODE | 48 CHARGE—2 ☐ FEL ☐ MISD | 49 UCR CODE |
|---|---|---|---|
| **Murder** | 0905 | | |

| 50 STATE CODE/LOCAL ORDINANCE | 51 WARRANT # | 52 DATE ISSUED | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # | 55 DATE ISSUED M D Y |
|---|---|---|---|---|---|
| 13A-6-2 (A-3) / 404 | WR-2004-910 | 1 0 2 9 0 4 | | | |

| 56 CHARGE—3 ☐ FEL ☐ MISD | 57 UCR CODE | 58 CHARGE—4 ☐ FEL ☐ MISD | 59 UCR CODE |
|---|---|---|---|
| | | | |

| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT | 62 DATE ISSUED M D Y | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT | 65 DATE ISSUED M D Y |
|---|---|---|---|---|---|
| | | | | | |

| 66 ARREST DISPOSITION | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| ☐ HELD ☐ BAIL ☐ RELEASED ☐ TOT-LE ☐ OTHER | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

### VEHICLE

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO TOP BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 71 VIN | | | 79 IMPOUNDED? ☐ YES ☐ NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|---|---|
| | | | | |

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | ☐ CONTINUED IN NARRATIVE |
|---|---|
| | |

### JUVENILE

| 82 JUVENILE DISPOSITION: | ☐ HANDLED AND RELEASED ☐ REF. TO JUVENILE COURT | ☐ REF. TO WELFARE AGENCY ☐ REF. TO OTHER POLICE AGENCY | ☐ REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|---|---|---|
| 84 PARENT OR GUARDIAN (LAST FIRST, MIDDLE NAME) | | 85 ADDRESS (STREET, CITY, STATE, ZIP) | | 83 PHONE ( ) |
| 87 PARENTS EMPLOYER | | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE ( ) |

### RELEASE

| 91 DATE AND TIME OF RELEASE | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID # |
|---|---|---|---|
| M D Y ☐ 1. AM ☐ 3. MIL ☐ 1. PM | | | |

| 95 RELEASED TO | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|
| | | |

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE ☐ YES ☐ NO ☐ PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY |
|---|---|---|
| | | LOCAL USE STATE USE |

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER |
|---|---|
| | |

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED ☐ Y ☐ N |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 111 ARRESTING OFFICER (LAST, FIRST, M) | 112 ID # | 113 ARRESTING OFFICER (LAST, FIRST, M) | 114 ID # | 115 SUPERVISOR ID # | 116 WATCH CMDR ID # |
|---|---|---|---|---|---|
| Johnson, James, Chris, | 308 | Barbour, David, E. | 305 | Barbour 305 | Freeman 301 |

TYPE OR PRINT IN BLACK INK ONLY

ACJIC—34 REV. 10-90

STATE OF ALABAMA                    TALLAPOOSA COUNTY                    DISTRICT COURT

AGENCY NUMBER:                          WARRANT NUMBER: WR 2004 000910.00
                                        OTHER CASE NBR:

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY COMMANDED TO ARREST    CORNELIUS JARMAINE MILNER   AND BRING
HIM/HER BEFORE THE DISTRICT   COURT OF TALLAPOOSA COUNTY TO ANSWER THE STATE
 ON A CHARGE(S) OF:
             FELONY MURDER   CLASS: A  TYPE: F  COUNTS: 001
AND HAVE YOU THEN AND THERE THIS WRIT WITH YOUR RETURN  THEREON.

YOU WILL RECEIVE UNTO YOUR CUSTODY AND DETAIN HIM/HER UNTIL THE
_____ DAY OF _____, OR UNTIL LEGALLY DISCHARGED.

DATED THIS 29 DAY OF OCTOBER, 2004.

BOND SET AT: (1) _____ BOND TYPE:
             (2) _____
             (3) _____

_____
JUDGE/CLERK/MAGISTRATE OF DISTRICT  COURT

CHARGES: FELONY MURDER      13A-006-002(A)(3)   F  FELONY

NAME: CORNELIUS JARMAINE MILNER          ALIAS:
ADDRESS: 3008 FRIENDLY HEIGHTS BLV       ALIAS:
ADDRESS:
CITY: DECATUR              STATE: GA      ZIP: 00000 0000
                                         PHONE: 000 000 0000 EXT: 000

EMPLOYMENT:
DOB: ████████        RACE: B   SEX: M    HAIR:
EYE:     HEIGHT: 0'00"  WEIGHT: 000
SID: 000000000  SSN: ████████  DL NUM: ████████

E X E C U T I O N

    EXECUTED THE WITHIN WARRANT BY ARRESTING THE DEFENDANT AND

    ( ✓ )  PLACING DEFENDANT IN THE TALLAPOOSA COUNTY JAIL

    (   )  RELEASING DEFENDANT ON APPEARANCE BOND


THIS ___155%___ DAY OF ___NOV-___ ___2004___

                    _____
                    SHERIFF

                    BY _____

COMPLAINANT:   INV D E BARBOUR
               DADEVILLE POLICE DEPT

               DADEVILLE  AL  36853

OPERATOR: MAY       DATE: 10/29/2004

OFFICIAL INFORMATION SYSTEM

* * * IN THE DISTRICT COURT OF TALLAPOOSA COUNTY * * *

AGENCY NUMBER:                          WARRANT NUMBER: WR 2004 000910.00
                                        OTHER CASE NBR:

C O M P L A I N T

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT COURT OF
TALLAPOOSA COUNTY, ALABAMA, PERSONALLY APPEARED   INV D E BARBOUR
WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR
BELIEVING, AND DOES BELIEVE THAT   CORNELIUS JARMAINE MILNER   DEFENDANT,
WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE
NAMED COUNTY AND

DID ON OR ABOUT _____10-24-04_____, COMMIT  OR ATTEMPT TO COMMIT _____
_____MURDER
OR ANY OTHER FELONY CLEARLY DANGEROUS TO HUMAN LIFE AND, IN THE COURSE OF
AND IN FURTHERANCE OF THE CRIME THAT HE IS COMMITTING OR ATTEMPTING TO
COMMIT , OR IN IMMEDIATE FLIGHT THEREFROM, HE OR ANOTHER PARTICIPANT IF
THERE BE ANY, CAUSED THE DEATH OF __COURTNEY C RUSSELL_____,
BY_____SHOOTING HIM WITH A GUN_____OF THE CODE OF ALABAMA,
IN VIOLATION OF 13A-006-002(A)(3)
AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

                                    COMPLAINANT'S SIGNATURE

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 29 DAY OF OCTOBER, 2004.

JUDGE/CLERK/MAGISTRATE OF DISTRICT COURT

CHARGES: FELONY MURDER        13A-006-002(A)(3)    F  FELONY

WITNESS FOR THE STATE

INV D E BARBOUR/DADEVILLE POLICE DEPT/DADEVILLE/36853

OFF JAMES C JOHNSON/DADEVILLE POLICE DEPT/DADEVILLE/36853
JERMIE O GREATHOUSE/16482 HWY 50/CAMP HILL/36850
JACORY O GREATHOUSE/16482 HWY 50/CAMP HILL/36850
SGT W D TRAYLOR/DADEVILLE POLICE DEPT/DADEVILLE/36853
OFF BRIAN FIELDERS/DADEVILLE POLICE DEPT/DADEVILLE/36853

OPERATOR: MAY    DATE: 10/29/2004



Lt. David E. Barbour
Investigator

## The District Court of Tallapoosa County Alabama

Warrant Number: ŲR04910
Case Number: **DP0410114**

## District Court Affidavit

**Offense: Felony Murder**
**Defendant's Name: Cornelius Jarmaine Milner**
Defendant's Address: 3008 Friendly Heights. Blvd. Decatur Georgia
                    103 Ramsey Drive Jacksonville North Carolina
Defendant's D.O.B. ~~████████~~, Age: 23, Sex: M, Race: B, S.S.# ~~████████~~
DL# ~~████~~ N.C. GA ID Card ~~████████~~, Phone Number: N/A
Employment: Unemployed
Date and time of occurrence: 10/24/2004 @ 1830-1847
Place of occurrence: Woodyard Street Area
How attacked? Firearm
Damage done or property attacked: Death of Courtney C. Russell age 21
Value of property:
Details of the offence: On said date and around said times the offender along with two subjects did cause the death of Courtney C. Russell by shooting him with a gun. I make this affidavit for the purpose of securing a warrant against the said: **Cornelous Jarmain Milner**, I understand that I am instituting a criminal proceeding and cannot drop this case. I further understand that if any of the foregoing facts are untrue, I may, in addition to any other punishment provided by law, be taxed with court cost in this proceeding.
Sworn to and subscribed before me this: _____
Day of: 29⁴ , Year of: 2004                      (Complainant)
_____       _____
(Judge / Clerk / Magistrate)                (Address)

                                 _____
                                   (Phone Number)

Witness: _____
       (Name)          (Address)       (Phone Number)
Inv. D.E.Barbour, C/O Dadeville Police Dept. Dadeville Al. 36853,   256-825-6212
Officer James C. Johnson,
Officer Jimmy Burdon,
Officer Brian Fielders,
Sgt. W. D. Traylor,
Jermie O. Greathouse, 16482 Hwy. 50 Camp Hill AL. 36850, Phone: 256-896-4394
Jacory O. Greathouse, 16482 Hwy. 50 Camp Hill AL. 36850, Phone: 256-896-4394
                                                      Page 1 of 1

                                                              DEB 305

PictureLink for Windows

**ID#: 410**

## MILNER, CORNELIUS
## 3008 FRIENDLY HEIGHTS
## DECATUR GA  30035
## (678)760-0932

**Previous Address:**

<PrevStreet>

<PrevCity>, <PrevState> <PrevZip>





11/4/2004 8:01:26 PM          11/4/2004 8:01:44 PM

## Identification Information:

| | |
|---|---|
| Gender: Male | Race: Black |
| Ethnic: _____ | DOB: 0████████  Age: |
| Height: 5'10 | Weight: 155lbs |
| Hair: Black | Eyes: Brown |
| Complexion: | Glasses: _____ |
| Hairstyle: _____ | Teeth: _____ |
| Speech: _____ | Build: _____ |
| State ID: NC0724312A | Fed ID: 694906EB4 |
| DL: X██████ - GA | |
| Local ID: ___ | LID Type: |
| SMT Code: | Desc: _____ |
| MO: _____ : | _____ |
| _____ : | _____ |

Notes:  ALTENATE LICENCE GA 051764220 ID CARD 3008
FRIENDLY HGTS BLVD



# TALLAPOOSA COUNTY JAIL

## IN-PROCESSING CHECK LIST

*LOC 144*

Inmates Name: _MILNER, CORNELIUS_   Name ID: _410_   Date In: _11/04/04_

Booking Number: _04 - 00186 1_   Time In: _1650_   Shift: _B-2_

✓ 1. Medical screening completed. Notify nurse of any major problems.

✓ 2. Property Issued. (Explain to inmate about the responsibility of property.)   _NOT ISSUED PLACED IN C-10_

___ 3. Finger printing. Livescan.

✓ 4. Photos. _NEED_

✓ 5. Arrest report, IO reports, Arrest Authentication sheet in file.

✓ 6. Bond Set, Purge amount set, and inmate has been informed. Comments:_____

   _CALL JUDGE_

✓ 7. All copies of reports made and copies and originals in appropriate location.

✓ 8. All property and valuables have been secured in appropriate location.

✓ 9. Any cash inmate request to be transferred to commissary account has been accounted for and

   placed in appropriate location.

✓ 10. NCIC Check completed:

   ✓ No wants or warrants

   ___ Wanted for:_____

   by: _KELLEY_

_C Stewart_                    _11/04/04 - 2030_

Booking Officer's Signature          Date/Time Booking Completed

_P. Osborne_

Supervisor Reviewed

*Supervisor must review all bookings prior to filing record.

**CORRECTIONS**



# TALLAPOOSA COUNTY JAIL

## OUT-PROCESSING CHECK LIST

*LOC 144*

Inmates Name: MILNER, CORNELIOS Name ID: 410 Date Out: _____

Booking Number: 04 - 001861 Time Out: _____ Shift: _____

_____ 1. Manner in which inmate is being released has been confirmed.

_____ 2. NCIC Check completed:

      _____ No wants or warrants

      _____ Wanted for: _____

           by: _____

_____ 3. Inmate returned all issued property, spillman updated.

_____ 4. Inmate received and signed for all his/her property, spillman updated.

_____ 5. Bond completed and copies/originals in appropriate location.

_____ 6. Copy of bond/receipt/order has been placed in inmates record.

_____ 7. Cash Account: Inmate received commissary funds upon release: Yes/No

      If no explain: _____

_____ 8. Ensure all data has been updated in spillman, bonds, holds, property, etc.

_____          _____

Booking Officer's Signature                     Date/Time Release Completed

_____

Supervisor Reviewed

*Supervisor must review all releases prior to filing record.

**CORRECTIONS**

```
11/04/2004              Tallapoosa County Sheriff's Department                    280
19:48                                                                    Page:      1
                         Receipt for Personal Property Stored

      Receipt Number:      65377                 Date: 11/04/2004
      Booking Number: 04-001861
Property Stored for: CORNELIUS JERMAINE MILNER (          410)

I, CORNELIUS JERMAINE MILNER, certify that on the above date and time, the
following personal property was accepted into storage:
```

| ITEM | DESCRIPTION | CASH? | QUANTITY | LOCATN |
|------|-------------|-------|----------|--------|
| NECKLACE | YELLOW CHAIN | N | 1 | LO144 |
| HAIR BRAID | WHITE AND BROWN IN COLOR | N | 2 | LO144 |
| SHIRT | WHITE IN COLOR | N | 1 | LO144 |
| PANTS | BROWN IN COLOR | N | 1 | LO144 |
| SHOES | BROWN IN COLOR | N | 2 | LO144 |
| UNDERWEAR | RED IN COLOR | N | 1 | LO144 |
| SWEAT PANT | GRAY IN COLOR | N | 1 | LO144 |

Property received by:                    Property stored for:

HOWARD                                   CORNELIUS JERMAINE MILNER

11/04/2004          Tallapoosa County Sheriff's Department                    280
19:49                                                              Page:      1
            Receipt for Property and Personal Use Items Issued

      Receipt Number:    10395              Date: 11/04/2004
      Booking Number: 04-001861
Property issued to: CORNELIUS JERMAINE MILNER (        410

I, CORNELIUS JERMAINE MILNER, certify that on the above date and time, the
following property and personal use items were issued to me by
HOWARD

| ITEM | DESCRIPTION | SIZE | QUANTITY | CONDITION |
|------|-------------|------|----------|-----------|
| BLANKET | COTTON WHITE | | 1 | |
| PROPERTY BOX | CLEAR PLASTIC / BLUE TOP | | 1 | |
| SOAP | SOAP | | 1 | |
| PILLOW | FOAM | | 1 | |
| MATTRESS | GREEN, BLUE PLASTIC/FOAM | | 1 | |
| TOWELL | TOWELL WHITE COTTON | | 1 | |
| SANDLES | PVC BROWN OR TAN | | 2 | |
| RULE BOOK | WHITE PAPER | | 1 | |
| WASH CLOTH | SMALL WASH CLOTH COTTON | | 1 | |
| MATTRESS COVERS | | | 1 | |
| LAUNDRY BAG | NET NYLON | | 1 | |
| SHEETS | WHITE COTTON SHEETS | | 2 | |
| SHIRTS | WHITE COTTON UNISEX | | 3 | |
| PANTS | WHITE COTTON TROUSERS UNISEX | | 3 | |
| CUP | PLASTIC | | 1 | |
| TOOTHPASTE | FRESH MINT | | 1 | |
| TOOTHBRUSH | SMALL HANDLE | | 1 | |
| PEN | INK PEN BLACK INK, RUBBER CASE | | 1 | |
| PILLOW CASE | WHITE COTTON | | 1 | |

Property received by:                    Property issued by:

X _Cornelius Milner_                      _____
CORNELIUS JERMAINE MILNER                 HOWARD

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: C-10                    Date 11-5-04

Inmate: Milner, Caroline

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 1305 | Lying on back | 132 | 0105 | on R side | 133 |
| 1315 | tray picked up | 164 | 0125 | on R side | 133 |
| 1400 | on stomach | 164 | 0138 | on R bed | 73 |
| 1459 | on back | 164 | 0145 | on R side | 133 |
| 1525 | to library | 164 | 0210 | on R bed | 73 |
| 1530 | return to cell | 164 | 0255 | on L side | 184 |
| 1915 | Sleep in Bed | C32 | 0330 | on back sleep | 154 |
| 1932 | in Bed Sleep | C32 | 0340 | on bed sleep | 73 |
| 1815 | TRAY served | 133 | 0400 | on R side | 133 |
| 1830 | TRAY up | 133 | 0430 | on stomach | 184 |
| 1837 | Talking to me | C32 | 0515 | sleep on R side | 158 |
| 1850 | lying on bed | C32 | 0610 | put on mop bucket | 158 |
| 1900 | woke on bed | C32 | 0640 | served tray | 158 |
| 1919 | lying on bed | 154 | 0800 | picked up tray | 165 |
| 1930 | given meds | C32 | 0830 | laying on back | 158 |
| 1950 | on BACK | 133 | 0912 | laying on stomach | 158 |
| 2030 | on bed | 76 | 0944 | laying on back | 158 |
| 2109 | gave fresh water | 154 | 1000 | laying on stomach | 158 |
| 2125 | using toilet | C32 | 1030 | laying on stomach | 158 |
| 2150 | Talked to inmate | 133 | 1045 | laying on stomach | 158 |
| 2245 | on stomach | 133 | 1100 | laying on stomach | 158 |
| 2300 | on L side | 133 | 1130 | laying on stomach | 158 |
| 0003 | Sleep in Bed | C32 | 1150 | laying on stomach | 158 |
| 0031 | on back on bunk | 154 | 1245 | served tray | 158 |
| 0035 | on bed on back | 73 | 1323 | picked up tray | 158 |
| 0050 | on R side | 133 | 1410 | on back | 132 |

# Tallapoosa County Jail
## Daily Jail Check Log

Date 11/04/04

Cell: C10

Inmate: MILNER, CORNELLUS

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 2005 | Placed in C-10 | 73 | 0315 | on L side | 73 |
| 2006 | out for booking | 73 | 0345 | on L side | 73 |
| 2021 | back in cell | 73 | 0400 | on R side | 154 |
| 2036 | sleep on mat | C8? | 0415 | on R side | 154 |
| 2110 | on stomach | 133 | 0430 | on L side | 135 |
| 2115 | on bed sleep | C8? | 0505 | on stomach | 164 |
| 2150 | on stomach | 133 | 0535 | on stomach | 16 |
| 2215 | on R side | 154 | 0620 | tray served | 164 |
| 2235 | awake on stomach | 154 | 0645 | trays picked up | 164 |
| 2250 | on L side | 133 | 0800 | on left side | 164 |
| 2300 | on R side | 133 | 0815 | on stomach | 164 |
| 2318 | on R side | 154 | 0830 | on stomach | 164 |
| 2330 | on L side | 154? | 0835 | to Nsg office | an |
| 2345 | on L side | 133 | 0850 | Returned to cell | an |
| 2400 | on stomach | 133 | 0852 | Blanket givn | an |
| 0020 | on L side | 133 | 0856 | laying on R side | 158 |
| 0030 | on L side | 133 | 0905 | laying on R side | 164 |
| 0050 | on stomach | 133 | 0930 | laying on R side | 164 |
| 0120 | on stomach | 154 | 0940 | to library with DPD | 164 |
| 0150 | on stomach | 133 | 1005 | return to cell | 164 |
| 0158 | in bed sleep | C8? | 1050 | on R side | 132 |
| 0215 | on R side | 154 | 1051 | on R side | 164 |
| 0230 | on stomach | 133 | 1128 | laying on stomach | 158 |
| 0250 | on stomach | 164 | 1225 | laying on stomach | 164 |
| 0210 | on L side | 133 | 1235 | trays served | 164 |
| 0215 | on L side | 73 | 1248 | laying on R side | 158 |

```
11/04/2004              Tallapoosa County Sheriff's Department            280
21:03                             Jail Log:                        Page:    1

Event Number:     410875                                          Active
      Name ID:       410    Confined
+-----------------------------------------------------------------------------+
| Last: MILNER                    First: CORNELIUS      Mid: JERM) |
| Addr: 3008 FRIENDLY HEIGHTS BOULEVARD      _ Phone: (678)760-0932 |
| City: DECATUR          ST: GA  Zip: 30035   DOB: ███████ SSN: ████████ |
|                                                                             |
+-----------------------------------------------------------------------------+
  Time/Date of Event: 21:00:21 11/04/2004    Treatment Date: __:__:__ __/__/____
      Type of event: 010  General Log Comments
           Quantity:    0.00
            Officer: HOWARD
     Booking Number: 04-001861
        Description:
WHILE BOOKING MR MILNER IN, HE ANSWERED THE QUESTION "ARE YOU THINKING
ABOUT COMMITING SUICIDE?"  AND "HAVE YOU EVER THOUGHT ABOUT COMMITING
SUICIDE?" WITH A YES ANSWER. I PLACED MR. MILNER IN A SUICIDE SMOCK AND
PLACED HIM IN C-10.

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =
```

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: _C-10_                          Date _11-10-04_

Inmate: _Milner_

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 0805 | on stomach | 147 | 1940 | standing at door | 164 |
| 0823 | On stomach | 147 | 2005 | Meals | 110 |
| 0836 | on R side mt | Cb3 | 2030 | sitting on bed | 164 |
| 0913 | On R Side | 147 | 2050 | sitting on bed | 164 |
| 0932 | Sleep on L | C142 | 2100 | standing | 164 |
| 0945 | On L side | C165 | 2120 | playing cards | 164 |
| 1000 | On Stomach | 147 | 2210 | R window | 110 |
| 1020 | On L side | C165 | 2230 | laying on back | 164 |
| 1035 | On L side | C165 | 2310 | laying on back | 164 |
| 1045 | on L side | C165 | 2340 | laying on back | 164 |
| 1115 | laying on R side | c134 | 0020 | laying on back | 164 |
| 1226 | Tray served | c134 | 0055 | laying on back | 164 |
| 1255 | Tray up | c134 | 0130 | laying on R side | 164 |
| 1410 | On Back | 147 | 0145 | laying on back | 110 |
| 1430 | at toilet | c142 | 0200 | laying on back | 110 |
| 1450 | sleep | C165 | 0225 | ON BACK | 162 |
| 1504 | walking around | 147 | 0250 | On back | 164 |
| 1548 | on stomach | 147 | 0315 | on back | 164 |
| 1640 | Sleep on stomach | c142 | 0345 | on stomach | 164 |
| 1702 | ON STOMACH | 162 | 0400 | laying on L side | 110 |
| 1720 | laying on stomach | 110 | 0420 | laying on L side | 110 |
| 1725 | laying on R side | 164 | 0445 | laying on stomach | 164 |
| 1800 | TALKED TO me | 162 | 0450 | laying on stomach | 110 |
| 1825 | tray served | 164 | 0510 | On L side | C165 |
| 1845 | tray picked up | 164 | 0530 | On L side | C165 |
| 1910 | standing | 164 | 0545 | on L side | C165 |

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: C-10

Date 11-7-04

Inmate: Milan, Cornelius

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 1255 | laying on R side | 83 | 2255 | on back sleep | 154 |
| 1315 | on R side not mot | C163 | 2300 | on BACK | 133 |
| 1326 | on R side | 158 | 2715 | on R Side | 133 |
| 1335 | laying on stomach | 82 | 2330 | On R Side | 133 |
| 1405 | laying on R side | 82 | 2345 | On L Side | 133 |
| 1435 | on R side | C163 | 0001 | On BACK | 133 |
| 1507 | on R side sleep | 158 | 0015 | On L Side | 133 |
| 1605 | laying on Back | 82 | 0030 | on BACK | 733 |
| 1615 | laying on BACK | 163 | 0045 | On L Side | 133 |
| 1730 | TAlking | 133 | 0100 | On L Side | 133 |
| 1730 | TAlking | 133 | 0120 | On L Side | 133 |
| 1755 | TRAy Served | 133 | 0140 | On L Side | 133 |
| 1815 | TRAy up | 133 | 0230 | on R side | 184 |
| 1835 | laying on back | 154 | 0700 | On BACK | 133 |
| 1900 | meds | 133 | 0330 | on back | 154 |
| 1903 | Out For cut | C3L | 0345 | Turning Over | C3L |
| | | | 0402 | sleep on mat | C3L |
| 1926 | Back in cell | C3L | 0430 | On BACK | 133 |
| 1930 | In B7 For Shower | C3L | 0435 | On R Side | 137 |
| | | | 0615 | Tray Serve | 147 |
| 2012 | On mat | C3L | 0830 | Tray up | 147 |
| 2048 | On mat | C3L | 0700 | Under Cover | 140 |
| 2115 | Given wAter | 133 | 0745 | Sleep on back | C142 |
| 2125 | TAlking | 133 | 0807 | asleep on back | C134 |
| 2200 | In Bed Sleep | C3L | 0815 | On stomach | 147 |
| 2217 | In Bed Sleep | C3L | 0832 | looking at me | C134 |

# Tallapoosa County Jail
## *Daily Jail Check Log*

Cell: _C-10_  Date _11-8-04_

Inmate: _Andrew,_

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 0855 | On Back | 147 | 2205 | on back | 164 |
| 0915 | At Sink | 147 | 2218 | laying on Back | 82 |
| 0942 | at sink | C134 | 2245 | laying on back | 164 |
| 1001 | moving on floor | C134 | 2305 | laying on back | 164 |
| 1015 | On R Side | 147 | 2330 | laying on Back | 82 |
| 1040 | On R Side | 147 | 2350 | laying on stomach | 82 |
| 1125 | On Stomach | 147 | 0030 | On Stomach | 162 |
| 1205 | Tray Serve | 147 | 0110 | on back | 164 |
| 1245 | Tray up | 147 | 0210 | on R side | 164 |
| 1435 | out to Booking room | C134 | 0330 | laying on Back | 82 |
| 1438 | back in cell | C134 | 0345 | laying on Back | 164 |
| 1500 | writing | 147 | 0350 | laying on back | 110 |
| 1518 | praying | C134 | 0415 | laying on L side | 164 |
| 1640 | On Stomach | 147 | 0435 | laying on back | 164 |
| 1655 | sitting on bed | 164 | 0510 | laying on Back | 165 |
| 1700 | laying on back | 110 | 0550 | laying on Back | 165 |
| 1735 | laying on back | 110 | 0615 | Trays served | 165 |
| 1800 | laying on back | 110 | 0650 | Pu Trays | 165 |
| 1830 | TRAY served | 162 | 0718 | On Stomach | 147 |
| 1900 | TRAY picked up | 162 | 0744 | On R Side | 147 |
| 1915 | standing | 164 | 0810 | Talking to me | C134 |
| 1950 | Meals | 110 | 0820 | On R Side | 147 |
| 2040 | LAYING ON BACK | 162 | 0855 | Meds given | an |
| 2055 | laying on Back | 82 | 0920 | on L side | C165 |
| 2135 | On R side | 162 | 0945 | on R side | 165 |
| 2205 | On BACK | 162 | 10:10 | On R side | 165 |

# Tallapoosa County Jail
## Daily Jail Check Log

Date __11-12-04__

Cell: __C-10__

Inmate: __Milner, Cornelus__

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 0730 | on Back | 163 | 1740 | Talking | 33 |
| 0745 | On Back | 143 | 1815 | (714) snow | 133 |
| 0800 | On R side | 163 | 1820 | By toilet | C3 |
| 0820 | on Back | 163 | 1830 | Taty | 133 |
| 0840 | on Back | 163 | 1900 | lying down | C3 |
| 0900 | spec cleaning | 163 | 1915 | mc | 133 |
| 0920 | couph on mat | C11b | 1950 | standing @ toilet | 134 |
| 0945 | laying awake | C11b | 2010 | EAT & C11b | 133 |
| 1015 | laying on R side | 158 | 2025 | Playing cards | C3 |
| 1037 | layon C side | a11b | 2040 | Playing cards | C3 |
| 1110 | laying on back | 158 | 2115 | Talking | C3 |
| 1130 | on R side | 132 | 2140 | on mat | C3 |
| 1200 | on mat | a11b | 2150 | on Back | 133 |
| 1215 | on mat | C11b | 2230 | on back | 154 |
| 1231 | Tray servis | C11b | 2316 | on back sleep | 154 |
| 1246 | Tray up | a11b | 2345 | on Right side | 133 |
| 1801 | on mat | C11b | 0013 | on stomach | 154 |
| 1330 | on toilet | 132 | 0045 | on L side | 133 |
| 1345 | playing cards | 158 | 0115 | on R side | 133 |
| 1400 | playing cards | 172 | 0145 | on stomach | 133 |
| 1420 | playing cards | 158 | 0220 | on R side | 154 |
| 1445 | playing cards | 158 | 0245 | on R side | 184 |
| 1509 | playing cards | 158 | 0315 | on Back | 133 |
| 1536 | standing up | 158 | 0330 | on head | 73 |
| 1615 | sitting on mat | C3 | 0410 | on R side | 133 |
| 1725 | Talking | 133 | 0435 | on stomach | 154 |

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: C-10                    Date 11-11-04

Inmate: Milner

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 0620 | Tray served | C165 | 1823 | Tray picked up | 162 |
| 0645 | sleep | C165 | 1902 | Talked to me | 162 |
| 0700 | Pu Tray | C165 | 1950 | Hot & Cold | 162 |
| 0743 | moving around | c134 | 2010 | Meds | 110 |
| 0915 | sleep | C165 | 2045 | sitting on mat | 110 |
| 1034 | On stomach | 147 | 2120 | OUT FOR shower | 162 |
| 1050 | on L side | 165 | 2145 | Back in cell | 162 |
| 1115 | on R side | C165 | 2204 | Talked to me | 162 |
| 1140 | Talking | c134 | 2212 | talking to me | 154 |
| 1208 | looking around cell | c134 | 2220 | laying on back | 164 |
| 1300 | Tray served | C165 | 2255 | sitting on mat | 164 |
| 1315 | sleep | C165 | 2330 | laying on back | 164 |
| 1330 | Tray up | C165 | 2345 | laying on back | 164 |
| 1350 | sleep | C165 | 0020 | laying on back | 164 |
| 1425 | sleep | C165 | 0053 | ON BACK TALKING | 162 |
| 1500 | sleep | C165 | 0121 | sleep on back | 154 |
| 1520 | sleep | C165 | 0155 | on stomach | 164 |
| 1545 | sleep | C165 | 0200 | laying on stomach | 110 |
| 1610 | sleep | C165 | 0246 | laying on stomach | 164 |
| 1630 | sleep on L side | C165 | 0315 | on R side | 162 |
| 1645 | sleep on L side | C165 | 0345 | on back | 164 |
| 1705 | ON FLOOR looking around | 162 | 0400 | laying on L side | 110 |
| 11 | | 11 | 0420 | laying on L side | 110 |
| 1725 | walking around in cell | 110 | 0440 | laying on back | 164 |
| | | | 0500 | sleep on stomach | 158 |
| 1754 | Tray served | 162 | 0540 | sleep on L side | 158 |

0635 Tray up        C165    0610  Tray served    C126
0700 sleep on stomach       0715

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: _C-10_

Inmate: _Milner_

Date _11-09-04_

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 1033 | on (R) side | 147 | 2045 | sitting on floor | 162 |
| 10:45 | on R side | C165 | 2113 | Hot & Cold | 162 |
| 1100 | on L sleep | C148 | 2145 | standing | 164 |
| 11:20 | on (R) side | C165 | 2213 | Talking | 162 |
| 1200 | on L side | C142 | 2220 | laying on (R) side | 110 |
| 15:20 | Trays arrived | C165 | 2300 | laying on back | 110 |
| 1300 | P/U Trays | C165 | 2320 | laying on back | 110 |
| 1315 | on side | C165 | 2347 | on back | 162 |
| 1330 | on side | C165 | 0025 | on (R) side | 162 |
| 1340 | on side | C165 | 0100 | laying on back | 82 |
| 1429 | (R) side | C134 | 0125 | laying on R side | 164 |
| 1537 | On stomach | 147 | 0157 | on stomach | 162 |
| 1629 | at door | C134 | 0230 | on stomach | 162 |
| 1640 | on back | C165 | 0245 | laying on back | 110 |
| 1706 | on (R) side | 162 | 0300 | laying on back | 110 |
| 1720 | laying on back | 110 | 0335 | on (R) side | 162 |
| 1740 | on back | 162 | 0410 | on (R) side | 162 |
| 1830 | Tray served | 162 | 0411 | laying on (R) side | 110 |
| 1845 | laying on (R) side | 110 | 0440 | laying on L side | 164 |
| 1850 | tray picked up | 164 | 0507 | on stomach | 147 |
| 1915 | sitting on floor | 162 | 0558 | Tray serven | 147 |
| 1930 | walking around | 162 | 0635 | Med given | ə |
| 1945 | for shower | 164 | 0637 | Tray up | 147 |
| 1950 | meds given | 82 | 0725 | sleep on R | 147 |
| 2004 | in from shower | 164 | 0800 | on stomach | 147 |
| 2020 | sitting on floor | 110 | | | |

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: C10

Date 11-13-04

Inmate: Milner Comedus

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 2245 | On L side | 133 | 1033 | laying on R side | 158 |
| 2305 | On L side | 133 | 1055 | laying on R side | 158 |
| 2345 | on R side | 154 | 1130 | Standing up | 163 |
| 0012 | on R side | 154 | 1166 | Tray Serve | 147 |
| 0045 | on R side | 154 | 1200 | standing up | 163 |
| 0110 | ON stomach | 133 | 1205 | TRAY up | C156 |
| 0130 | ON R side | 133 | 1215 | playing cards | 158 |
| 0150 | On stomach | 164 | 1242 | playing card | 147 |
| 0220 | ON L side | 133 | 1310 | walking around | 132 |
| 0230 | on L side | 133 | 1336 | Talking | |
| 0250 | on L side | 133 | 1355 | Talking | C157 |
| 0320 | on L side | 154 | 1420 | Water Passing | C156 |
| 0400 | ON stomach | 133 | 1450 | R side | 167 |
| 0430 | on back | 154 | 1510 | on back | 163 |
| 0501 | Sleep on B | 167 | 1531 | lay on back | C156 |
| 0600 | On back | 147 | 1556 | lay on back | C157 |
| 0620 | tray served | 147 | 1610 | lay on back | C156 |
| 0700 | picked up tray | 147 | 1649 | on his stomach | 158 |
| 0725 | on back | 132 | 1711 | on R side | 154 |
| 0740 | Laying on stomach | 167 | 1735 | on back | 154 |
| 0810 | laying on stomach | 158 | 1800 | tray served | 133 |
| 0839 | laying on stomach | 158 | 1830 | tray up | 154 |
| 0855 | on stomach | 163 | 1845 | Sitting on mat | C3l |
| 0910 | on back awake | 158 | 1855 | In B7 for | C3l |
| 0925 | laying on back | 167 | | Shower | |
| 0957 | laying on R side | 158 | | Back in cell | 133 |

# Tallapoosa County Jail
## Daily Jail Check Log

Date 11-14-04

Cell: C-16

Inmate: Milnea Coquelus

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 2000 | Given meds & water | C3L | 0445 | sleep ® side | 163 |
| 2045 | Given water | 139 | 0504 | sleep on back | 158 |
| 2154 | on left | 73 | 526 | sleep on ® side | 158 |
| 2208 | on left | 73 | 553 | sleep on ® side | 158 |
| 2217 | on left | 73 | 615 | laying on back | 158 |
| 2231 | on left | 73 | / | served tray | / |
| 2240 | Talking | 133 | 0630 | on L side | 132 |
| 2300 | Talking | 133 | 0635 | on ® side | 157 |
| 2324 | on stomach | C3L | 659 | picked up tray | 158 |
| 2346 | on back | 154 | 0722 | on ® side | 167 |
| 0005 | on back | 133 | 745 | on ® side | 158 |
| 0017 | on back | 73 | 0830 | sleep on stomach | 158 |
| 0036 | on ® side | 139 | 0854 | sleep on stomach | C136 |
| 0041 | on ® side | 73 | 0910 | sleep on stomach | C136 |
| 0045 | on ® side | 73 | 0925 | Meds given | Q |
| 0105 | on L side | 133 | 0940 | sleep ® side | C136 |
| 0131 | on back | 154 | 950 | sleep on stomach | 158 |
| 0200 | on ® side | 154 | 1020 | on stomach | 132 |
| 0305 | on back | C3L | 1030 | on ® side | 163 |
| 0255 | on L side | C3L | 1050 | on ® side | 163 |
| 0320 | on back | 133 | 1109 | on ® side | 158 |
| 0340 | on back | 154 | 1150 | on stomach | 167 |
| 0405 | on back | 154 | 1219 | served tray | 158 |
| 0415 | on back | 133 | 1243 | Tray up | C136 |
| 0425 | on L side | 133 | 1304 | laying on back | 158 |
| | | | 1320 | laying on back | 167 |

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: C10

Date 11-12-04

Inmate: Milner, Cornelius

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 0500 | on R side | 163 | 1450 | Lay on R side | 167 |
| 0515 | sitting up | 163 | 1510 | left side | 158 |
| 0553 | sitting up | 158 | 1536 | laying on R side | 158 |
| 0620 | served tray | 158 | 1537 | laying L side | C156 |
| 0636 | picked up tray | 158 | 1600 | on stomach | 132 |
| 0719 | laying on R side | 167 | 1621 | on stomach | C52 |
| 0724 | laying on back | 158 | 1624 | laying on stomach | 158 |
| 0830 | on R side | 163 | 1636 | laying on R side | 158 |
| 900 | on stomach | 132 | 1644 | on R side | C52 |
| 0913 | staring at door | 167 | 1650 | sitting up | 158 |
| 0531 | meds given | C156 | 1708 | sitting on bunk | 164 |
| 10:10 | Back to wall door | 167 | 1736 | ON R side | C31 |
| 1026 | Playing Cards | C156 | 1750 | Tray served | 133 |
| 1045 | playing Cards | 158 | 1815 | Tray up | 133 |
| 1103 | laying on back | 158 | 1832 | Given meds | C31 |
| 1124 | laying on back | 158 | 1900 | on not awake | 154 |
| 1140 | laying on back | 163 | 1932 | talking | 154 |
| 1220 | served tray | 158 | 2000 | playing cards | 164 |
| 1233 | laying on back | 158 | 2024 | Straightening Bed | C31 |
| 1255 | picked up tray | 158 | 2046 | Hot/Cold | 154 |
| 1310 | lay on R side | 163 | 2120 | Talking | 154 |
| 1325 | Sleep on Stomach | 167 | 2140 | Talking | 154 |
| 1335 | lay on stomach | 163 | 2200 | on R side | 154 |
| 1348 | on stomach | 158 | 2225 | on Stomach | 154 |
| 1410 | on R side | 132 | | | |
| 1413 | laying on back | 158 | | | |

# TALLAPOOSA COUNTY JAIL
## INMATE REQUEST FORM
### (ONLY ONE REQUEST PER FORM)

NAME: _Cornelius Milner_  ID# _410_  CELL# _B-2_  DATE: _12-14-04_

---

BRIEFLY OUTLINE YOUR REQUEST:

_I would like to request a Bible Please. One with big Written if you Can. Thank You for Your time._

_Cornelius Milner_
(INMATES SIGNATURE)

---

DO NOT WRITE BELOW THIS LINE – FOR REPLY ONLY

Bible Issued # 423871

_12-14-04_
(DATE)

_Lt. Moss_
(OFFICERS SIGNATURE)

TCJ Form -04

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: C-10                                          Date 11-16-04

Inmate: Miln, Cornelous

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 1311 | On Stomach | 147 | 2400 | laying on back | 110 |
| 1333 | on Stomach | 147 | 0020 | laying on stomach | 164 |
| 1412 | on stomach | 158 | 0045 | laying on stomach | 110 |
| 1440 | on stomach | 158 | 0123 | ON STOMACH | 162 |
| 1538 | on (R) side | 158 | 0150 | on back | 164 |
| 1627 | on Back | 147 | 0225 | on stomach | 164 |
| 1649 | playing cards | 158 | 0305 | on Stomach | 164 |
| 1700 | playing cards | 164 | 0335 | Laying on back | 110 |
| 1730 | playing cards | 164 | 0355 | laying on L side | 164 |
| 1750 | tray served | 164 | 0415 | laying on stomach | 164 |
| 1815 | eating | 164 | 0440 | laying on stomach | 164 |
| 1835 | tray up | 164 | 0510 | On stomach | 147 |
| 1900 | exercising | 110 | 0530 | on (R) side | C-15I |
| 1935 | exercising | 110 | 0603 | Tray Serve | 147 |
| 1945 | HOT & COLD | 162 | 6620 | Tray up | 147 |
| 2015 | playing cards | 164 | 0645 | Meds given | a |
| 2040 | out for shower | 164 | 0705 | on (R) side | C-10I |
| 2100 | in from shower | 164 | 0722 | on (R) side | C-10I |
| 2115 | playing cards | 110 | 0736 | on (R) side | C-15I |
| 2130 | playing cards | 110 | 0836 | on (R) side | C166 |
| 2145 | talked to me | 110 | 0928 | with Nurse | 147 |
| 2200 | talked to me | 110 | 1002 | On Back | 147 |
| 2225 | laying on back | 164 | 1826 | on Back | 161 |
| 2300 | laying on back | 164 | 1048 | On Back | 147 |
| 2320 | laying on R side | 164 | 1105 | on Back | C-15I |
| 2350 | laying on stomach | 164 | 1206 | Tray Serve | 147 |
|      |         |      | 1233 | Tray up | 147 |

# Tallapoosa County Jail
## Daily Jail Check Log

Cell: _C-10_            Date _11-15-04_

Inmate: _Milner, Cornelius_

| Time | Remarks | C.O. | Time | Remarks | C.O. |
|------|---------|------|------|---------|------|
| 1418 | playing cards | 158 | 0140 | ON (L) Side | C3L |
| 1453 | playing cards | 158 | 0202 | (R) side | 154 |
| 1510 | playing cards | 163 | 0230 | (L) red | 73 |
| 1648 | playing cards | 158 | 0301 | ON BACK | M 33 |
| 1728 | lying in Bed | C3L | 0320 | on Back | 133 |
| 1748 | lying in Bed | C3L | 0348 | on back | 73 |
| 1810 | Tray serves | 133 | 0414 | (L) side | 154 |
| 1846 | tray up | 154 | 0431 | on (R) side | 154 |
| 1905 | Hot & cold | C37 | 0450 | on (L) red | 73 |
| 1940 | mess sweet | 73 | 0570 | on (L) side | C156 |
| 2015 | Talking | 173 | 0531 | on (L) side | C133 |
| 2040 | Getting water | C3L | 0552 | tray serves | C133 |
| | | | 0640 | Med giver | (a) |
| 2100 | Talking | 133 | 0616 | Tray up | C133 |
| 2101 | talking | 73 | 0700 | laying | C133 |
| 2124 | ON (L) Side | C3L | 0726 | on Back Le | 147 |
| 2140 | on (L) red | 73 | 0748 | on (L) side | 158 |
| 2200 | on back | 154 | 0803 | on stomach | 158 |
| 2217 | on left side | 154 | 0820 | on (L) side | 158 |
| 2243 | on (L) red | 73 | 0849 | on stomach | 147 |
| 2312 | on (L) red | 73 | 0930 | on stomach | 147 |
| 2330 | on back | 154 | 1010 | talked to McNichols | 158 |
| 2345 | on Back | 133 | 1043 | laying on (L) side | 158 |
| 0001 | ON BACK | 133 | 1105 | sitting up | 158 |
| 0029 | on back | 154 | 1120 | Sitting on floor | 147 |
| 0110 | ON (R) side | C3L | 1251 | Tray Serve | 147 |
| | | | 1309 | Tray up | 147 |

```
01/10/2006              Tallapoosa County Sheriff's Department              433
11:35                              Jail Log:                      Page:    1

                                                                         Active
  Event Number:    565111
     Name ID:        410   Confined
+-------------------------------------------------------------------------+
| Last: MILNER                      First: CORNELIUS    Mid: JERMA |
| Addr  3008 FRIENDLY HEIGHTS BOULEVARD    Phone: (678)760-0932          |
| City: DECATUR           ST: GA  Zip: 30035   DOB: ████████  SSN: ████████ |
|                                                                         |
+-------------------------------------------------------------------------+
  Time/Date of Event: 11:31:42 01/10/2006    Treatment Date:
         Type of event: 009  DISCIPLINARY
             Quantity:    1.00
              Officer: COWART
       Booking Number: 04-001861
         Description:
(See below)
```

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =


Description:

RULE VIOLATION REPORT (TCJ FORM-19)

INCIDENT DATE:1-10-2006

INCIDENT TIME:11:15

CELL NUMBER:B-2

STATEMENT OF CHARGES/RULE VIOLATIONS:WEARING ANY MATERIAL, IN ANY WAY, ON THE
HEAD

NARRATIVE:ON THE ABOVE DATE AND TIME WHILE DOING A HALL CHECK ON B-HALL I
NOTICED THAT MR. MILNER HAD A SOCK ON HIS HEAD THE SOCK WAS TAKEN AT THAT TIME.

RECOMMENDED DISCIPLINARY ACTION:5 DAYS SUSPENDED OVER THE NEXT 45

REPORTING OFFICER:

SUPERVISOR:

## DISCIPLINARY ACTION
### On this 10th day of January 2006

TO:        Cornelius Milner                                    Cell B-2

FROM:      Blake Jennings

SUBJECT:   Disciplinary/Event #565111

On January 10, 2006 Lt. Cowart filed a Rule Violation Reports against you for:

Wearing any material, in any way, on the head

On January 10, 2006 you were served with TCJ Form-19A, Pending Disciplinary Action. You chose to waive your right to a hearing before a disciplinary committee and acknowledge guilt of misconduct. You also accept whatever action is deemed appropriate by the Jail Administrator.

Therefore you will serve five (5) days suspended over the next 45 days in disciplinary detention with no commissary privileges for one week.

Blake Jennings                          Served to the above inmate on Jan 10th 2006,
Jail Administrator
                                        by _____ Lt. C____

cc:    Inmate File
       Jail Staff

# TALLAPOOSA COUNTY JAIL
## INMATE REQUEST FORM
### (ONLY ONE REQUEST PER FORM)

NAME: _Cornelius Milner_  ID# _410_  CELL# _B-2_ DATE: _12-8-04_

BRIEFLY OUTLINE YOUR REQUEST:

_Please take everybody off my visitation list. I dont_
_want to see nobody until after Christmas. Seeing_
_my family walk out an go home. an I have to come_
_back to my cell get's to me. Please respect my feelings._

_Cornelius Milner_
(INMATES SIGNATURE)

DO NOT WRITE BELOW THIS LINE – FOR REPLY ONLY

_____ (DATE)         _____ (OFFICERS SIGNATURE)

TCJ Form -04



# TALLAPOOSA COUNTY JAIL
## INMATE VISITORS LIST

Milner     Cornelius               11-11-04

NAME (LAST)       (FIRST)          CELL #   B1   B2     DATE

LIST A MAXIMUM OF FIVE NAMES OF FAMILY OR FRIENDS THAT YOU WOULD LIKE TO COME VISIT YOU.

#1 NAME: Mattie Peavey    AGE: ____ RELATIONSHIP: Aunt

ADDRESS: _____ PHONE #: _____

#2 NAME: Early George    AGE: ____ RELATIONSHIP: uncle

ADDRESS: _____ PHONE #: _____

#3 NAME: Shirly Guilatte   AGE: ____ RELATIONSHIP: Aunt

ADDRESS: _____ PHONE #: _____

#4 NAME: Jeremy Peavey   AGE: ____ RELATIONSHIP: Cousin

ADDRESS: _____ PHONE #: _____

#5 NAME: _____ AGE: ____ RELATIONSHIP: _____

ADDRESS: _____ PHONE #: _____

NOTE: THIS VISITORS LIST SHALL NOT BE CHANGED FOR 90 DAYS.

VISTATION DAY/TIME: Sun 1100     Cornelius Milner

                                   (INMATE SIGNATURE)

## DISCIPLINARY ACTION
### On this 10th day of January 2006

TO:      Cornelius Milner                                    Cell B-2

FROM:    Blake Jennings

SUBJECT:    Disciplinary/Event #565111

On January 10, 2006 Lt. Cowart filed a Rule Violation Reports against you for:

Wearing any material, in any way, on the head

On January 10, 2006 you were served with TCJ Form-19A, Pending Disciplinary Action. You chose to waive your right to a hearing before a disciplinary committee and acknowledge guilt of misconduct.  You also accept whatever action is deemed appropriate by the Jail Administrator.

Therefore you will serve five (5) days suspended over the next 45 days in disciplinary detention with no commissary privileges for one week.


Blake Jennings                      Served to the above inmate on Jan 10th 2006,
Jail Administrator
                                    by _____Lt. C_____.

cc:    Inmate File
       Jail Staff

## TALLAPOOSA COUNTY JAIL
### PENDING DISCIPLINARY ACTION

TO: Cornelius Milner                                    Cell Number B-2

This notice is to inform you that rule violations have been levied against you by Correctional Officers of the Tallapoosa County Jail. This will serve you notice that a Disciplinary Committee will be appointed within the next 7 days to hear the following rule violations against you
WEARING ANY MATERIAL, IN ANY WAY, ON THE HEAD

 If you feel that you are not guilty of the alleged violation, you may request a hearing before the disciplinary committee. When the committee reviews your case, you may present documentary evidence or call witnesses in your defense providing that this does not present an undue hazard to institutional safety or correctional goals.

You are hereby reminded that should you desire a hearing before the disciplinary committee, you have no right to confrontation of witnesses and no right to cross examine witnesses. Retained or appointed counsel will not be permitted.

### CHECK ONE

_____ I wish to have my case heard by the disciplinary committee and I hereby claim my right to 24 hours preparation time for my defense.

_____ I hereby waive my right to 24 hours preparation time and request an immediate hearing.

__✓__ After having been advised of my right to a hearing, I hereby acknowledge guilt of misconduct as charged and waive my right to a hearing before the disciplinary committee. I will accept whatever disciplinary action is deemed appropriate by the Jail Administrator. I am making this decision voluntarily and without coercion, threat, or promises from the jail staff.

Inmate Signature: _Cornelius Milner_
Date/Time: _1-10-06      11:40_

This notice was served to the above named inmate on _1-10-06_

at _11:40_               by _Lt. C-l_               .

Event # 539892                                    TCJ Form-19A

# TALLAPOOSA COUNTY JAIL
## INMATE REQUEST FORM
### (ONLY ONE REQUEST PER FORM)

NAME: _Cornelius Milner_  ID# _410_  CELL# _B-2_  DATE: _12-14-04_

BRIEFLY OUTLINE YOUR REQUEST:

_I would like to request a Bible Please. One with big Written if you Can. Thank You for Your Time._

_Cornelius Milner_
(INMATES SIGNATURE)

DO NOT WRITE BELOW THIS LINE – FOR REPLY ONLY

Bible Issued # 423871

_12-14-04_
(DATE)

_Lt. Moss_
(OFFICERS SIGNATURE)

TCJ Form -04

# Exhibit B
# Affidavit of Blake Jennings

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CORNELIUS MILNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:07-cv-00152-WHA-SRW** |
| | ) | |
| **TALLAPOOSA COUNTY JAIL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF BLAKE JENNINGS

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF TALLAPOOSA** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Blake Jennings, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.  My name is Blake Jennings.  I am over the age of nineteen and competent to make this affidavit.  I have personal knowledge of the matters set forth in this affidavit.

2.  I have been employed by the Tallapoosa County Sheriff's Department since 1998. I served as an Investigator from 1998 until I became the jail administrator on March 19, 2005.  I am a graduate of the Corrections Academy.

3.  I am familiar with the Plaintiff due to his incarceration in the Tallapoosa County Jail. Plaintiff has been a pretrial detainee throughout his incarceration.

4.  I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.      It is the policy of the Tallapoosa County Jail that sanitation and hygienic living conditions in the jail are maintained in an appropriate manner so as to provide a healthful environment.  The jail administrator makes certain that the jail is checked on a daily basis for sanitation.  The Tallapoosa County Jail is inspected by the State of Alabama Department of Corrections as well as the Tallapoosa County Health Department.  Interim inspections are carried out by the jail staff at the direction of the jail administrator.  The jail administrator has the jail cleaned on a daily basis using approved sanitary supplies.  Inmates are allowed to request cleaning materials to clean their living quarters at any time of day.

6.      Inmates who are HIV-positive are not segregated within the Tallapoosa County Jail.  HIV-positive inmates remain in an institution's general population as long as they do not require hospitalization.  Tallapoosa County jail staff's emphasis on education, precautions, and the professional management of HIV-positive inmates has rendered isolation unnecessary.

7.      Tallapoosa County Jail policies and training stress that jail officers must respond to the presence of blood, semen, vaginal fluids, or any body fluids containing visible blood under the presumption that these fluids are contaminated.  An inmate can have an HIV-positive roommate and not be at any risk of contracting the virus unless the inmates engage in high risk behavior.  However, Tallapoosa County Jail rules prohibit the types of behavior that result in the transmission of the HIV virus, such as sexual contact between inmates and the sharing of any needles.  Those prisoners who follow the rules are not in any significant danger of contracting the disease.  Inmates who are HIV-positive and who are believed to put other inmates or employees at risk, because they display intentional behavior that could result in the spread of the virus, are administratively separated from those whom they place at risk.

2

8.    Inmates who are infected with a staph infection are not segregated within the Tallapoosa County Jail unless the infected inmate requires hospitalization. Tallapoosa County jail staff's emphasis on education, precautions, and the professional management of inmates infected with staph has rendered isolation unnecessary.

9.    Inmates at the Tallapoosa County Jail who are infected with a staph infection receive appropriate medical treatment from the jail medical staff. An inmate can share a cell with an inmate with a staph infection and not be at any great risk of contracting the infection unless the inmates engage in high risk behavior. However, Tallapoosa County Jail rules prohibit the types of behavior that would make an uninfected inmate at risk of contracting a staph infection. Those prisoners who follow the rules are not in any significant danger of contracting the disease. Inmates who are exhibiting symptoms of a staph infection and who are believed to put other inmates or employees at risk, because they display intentional behavior that could result in the spread of the bacteria, are administratively separated from those whom they place at risk.

10.    Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. Each inmate is given an Inmate Rules and Regulations Handbook when they are booked into the jail. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Tallapoosa County Jail policy requires that an inmate receive a response to any grievance submitted within a reasonable amount of time. Any officer receiving a grievance form is to pass the grievance on to either the jail administrator or the

lieutenant for appropriate handling. This decision may be appealed by the inmate in writing to the chief deputy within seventy-two hours of receipt of the grievance decision. The inmate may appeal the chief deputy's decision in writing to the sheriff within seventy-two hours of the receipt of the chief deputy's decision. The decision of the sheriff is final. A copy of any grievance form which is filed by an inmate is to be placed in the inmate's Inmate File.

11.     Upon my review of the Plaintiff's inmate file, there is no grievance filed regarding the incident or conditions made the basis of his Complaint. Further, I never received a grievance from the Plaintiff regarding the incident or conditions made the basis of his Complaint. I have never received an appeal of any grievance from the Plaintiff.

12.     It is the policy of the Tallapoosa County Jail that access to appropriate health care services are provided for the inmates of the Jail for their physical and emotional well-being.

13.     The Jail employs a registered nurse, Nurse Cathy DuBose, who is on duty from 8:00 a.m. until 5:00 p.m. on Mondays through Fridays. She is on call at all times of the day and night. The Jail also employs an LPN who works approximately thirty hours a week at the jail caring for the inmates. Robert Schuster, M.D., also comes to the Tallapoosa County Jail once a week to see inmates who are referred to him by the nursing staff.

14.     An inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired. The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained.

15.     Except in the case of an emergency, each inmate requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate. In the event of a medical emergency, or a perceived medical

4

emergency, the shift supervisor arranges for medical services without delay. All medical appointments, including appointments with the jail nurse, are logged by the jail staff in the inmate log.

16. Inmates are given prescription medication as prescribed. Medication is distributed according to instructions from the prescribing physician and is distributed by a jail staff member as directed by the jail nurse. Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care.

17. It is the policy of the Tallapoosa County Detention Facility that sanitation and hygienic living conditions in the jail are maintained in an appropriate manner so as to provide a healthful environment as possible. The jail administrator makes certain that the jail is checked on a daily basis for sanitation. The Tallapoosa County Health Department is requested to inspect the jail at least on a quarterly basis. Interim inspections are carried out by the jail staff at the direction of the jail administrator. The jail administrator has the jail cleaned on a daily basis using approved sanitary supplies.

18. I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

19. Attached to the Special Report are true and accurate documents contained in the Plaintiff's jail file. I am the custodian of such documents, which were kept by me in the ordinary course of my business.

20.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

BLAKE JENNINGS

**SWORN TO** and **SUBSCRIBED** before me this $\underline{11}$ day of May, 2007.

NOTARY PUBLIC          MY COMMISSION EXPIRES JULY 18, 2008
My Commission Expires: _____

6

# Exhibit C
# Affidavit of Sheriff Jimmy Abbett

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **CORNELIUS MILNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:07-cv-00152-WHA-SRW** |
| | ) | |
| **TALLAPOOSA COUNTY JAIL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>AFFIDAVIT OF JIMMY ABBETT</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF TALLAPOOSA** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Sheriff Jimmy Abbett, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Jimmy Abbett.  I am over the age of nineteen and competent to make this affidavit.  I have personal knowledge of the matters set forth in this affidavit.

2.     I am the duly elected Sheriff of Tallapoosa County, Alabama.  I have served as sheriff since 1995.  Prior to serving as sheriff, I retired from the Alabama Department of Public Safety.

3.     I am familiar with the Plaintiff only due to her being incarcerated in the Tallapoosa County Jail.  I have no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.    I have delegated the responsibility for the day-to-day functions of the Tallapoosa County Jail to the Jail Administrator Blake Jennings.  As sheriff of Tallapoosa County, I am responsible for promulgating the policies governing the Jail.

6.    Inmates who are HIV-positive are not segregated within the Tallapoosa County Jail.  HIV-positive inmates remain in an institution's general population as long as they do not require hospitalization.  Tallapoosa County jail staff's emphasis on education, precautions, and the professional management of HIV-positive inmates has rendered isolation unnecessary.

7.    Tallapoosa County Jail policies and training stress that jail officers must respond to the presence of blood, semen, vaginal fluids, or any body fluids containing visible blood under the presumption that these fluids are contaminated.  An inmate can have an HIV-positive roommate and not be at any risk of contracting the virus unless the inmates engage in high risk behavior.  However, Tallapoosa County Jail rules prohibit the types of behavior that result in the transmission of the HIV virus, such as sexual contact between inmates and the sharing of any needles.  Those prisoners who follow the rules are not in any significant danger of contracting the disease.  Inmates who are HIV-positive and who are believed to put other inmates or employees at risk, because they display intentional behavior that could result in the spread of the virus, are administratively separated from those whom they place at risk.

8.    Inmates who are infected with a staph infection are not segregated within the Tallapoosa County Jail unless the infected inmate requires hospitalization.  Tallapoosa County jail staff's emphasis on education, precautions, and the professional management of inmates infected with staph has rendered isolation unnecessary.

2

9.      Inmates at the Tallapoosa County Jail who are infected with a staph infection receive appropriate medical treatment from the jail medical staff. An inmate can share a cell with an inmate with a staph infection and not be at any great risk of contracting the infection unless the inmates engage in high risk behavior. However, Tallapoosa County Jail rules prohibit the types of behavior that would make an uninfected inmate at risk of contracting a staph infection. Those prisoners who follow the rules are not in any significant danger of contracting the disease. Inmates who are exhibiting symptoms of a staph infection and who are believed to put other inmates or employees at risk, because they display intentional behavior that could result in the spread of the bacteria, are administratively separated from those whom they place at risk.

10.     Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. Each inmate is given an Inmate Rules and Regulations Handbook when they are booked into the jail. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Tallapoosa County Jail policy requires that an inmate receive a response to any grievance submitted within a reasonable amount of time. Any officer receiving a grievance form is to pass the grievance on to either the jail administrator or the lieutenant for appropriate handling. This decision may be appealed by the inmate in writing to the chief deputy within seventy-two hours of receipt of the grievance decision. The inmate may appeal the chief deputy's decision in writing to the sheriff within seventy-two hours of the receipt of the

chief deputy's decision. The decision of the sheriff is final. A copy of any grievance form which is filed by an inmate is to be placed in the inmate's Inmate File.

11.    I have never received a grievance from the Plaintiff regarding the incident or conditions made the basis of his Complaint. I have never received an appeal of any grievance from the Plaintiff.

12.    It is the policy of the Tallapoosa County Jail that access to appropriate health care services are provided for the inmates of the Jail for their physical and emotional well-being.

13.    The Jail employs a registered nurse, Nurse Cathy DuBose, who is on duty from 8:00 a.m. until 5:00 p.m. on Mondays through Fridays. She is on call at all times of the day and night. The Jail also employs an LPN who works approximately thirty hours a week at the jail caring for the inmates. Robert Schuster, M.D., also comes to the Tallapoosa County Jail once a week to see inmates who are referred to him by the nursing staff.

14.    An inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired. The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained.

15.    Except in the case of an emergency, each inmate requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate. In the event of a medical emergency, or a perceived medical emergency, the shift supervisor arranges for medical services without delay. All medical appointments, including appointments with the jail nurse, are logged by the jail staff in the inmate log.

4

16.   Inmates are given prescription medication as prescribed.   Medication is distributed according to instructions from the prescribing physician and is distributed by a jail staff member as directed by the jail nurse.  Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care.

17.   I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures without a court order.

18.   I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

JIMMY ABBETT

**SWORN TO** and **SUBSCRIBED** before me this _11_ day of May, 2007.

NOTARY PUBLIC    MY COMMISSION EXPIRES JULY 18, 2008
My Commission Expires: _____

5

# Exhibit D
# Inmate Rules and Regulations Handbook

# SECTION 2.0

# INTRODUCTION TO INMATE RIGHTS and GENERAL LIVING CONDITIONS

The Jail Facility is managed and controlled by the Sheriff of Tallapoosa County through his Jail Administrator and his Staff. The Staff maintains security, decent living conditions and fair treatment for all inmates. No inmate has the right to assign work to you, or have any control or supervision over you.

While incarcerated in this facility, you will be given fair and humane treatment. You are required to obey the law and the rules of this jail. If you damage public property, break the law, or rules of the Jail while you are incarcerated, you may be charged criminally and prosecuted, and/or disciplined appropriately.

Disciplinary action will be applied fairly to assist in the protection of health, safety, and security of all persons with this Detention Facility.

An inmate has certain rights within our facility, but with every right comes responsibility. You have the right to expect, as a human being, to be treated with respect, impartiality, and fairness by all personnel. You have the responsibility to treat others, both employees and inmates, in the same manner.

You have the right to be informed of Jail rules, procedures and operation schedules. You have the *RESPONSIBILITY* to know and abide by them. Correctional Officers in this facility should make every effort to ensure your rights. Every inmate must accept *RESPONSIBILITY* for his/her own actions.

Three meals will be served daily. There will not be a lapse of more than fourteen (14) hours between any two (2) meals. Inmates are not allowed to keep dinner trays and other eating utensils in their cells. This does not include spoons or cups issued/purchased from the Commissary.

1

Inmates do not have the right to have obscene photographs, pictures or literature in their possession. Revolutionary or inflammatory publications or materials of such nature will not be allowed in the jail.

Depending on weather conditions, staff availability, and security conditions, every effort will be made to insure that every inmate, who so desires, is placed outside in the exercise yard for at least one hour. This will be done Monday through Friday. When being moved to the exercise yard, you are to move quietly in a single file and not disturb the other cells. This will result in suspension of the daily exercise.

There are no inmate unions or organizations in this facility. There are no "Inmate Courts" or "Kangaroo Courts" and no inmate in confinement with you has been given any authority whatsoever over your situation. Any attempt by an inmate or group of inmates to impose fines or punishment will be a violation of the established rules and regulations and will receive maximum disciplinary sanctions.

The following rules and regulations state what is expected of you and what the Corrections Officers can do for you while you are incarcerated. You are encouraged to read and understand the rules. If you do not understand the rules, ask an officer to explain them to you.

## SECTION 3.0

## INMATE RESPONSIBILITIES

**A.   Personal Cleanliness / Laundry-** It is important that you practice good hygiene and personal appearance. Bathing facilities should be provided to you daily. For health and security reasons, excessively long hair (head and facial) is not allowed and crew type haircuts will be provided if you are incarcerated over a period longer than one week or seven (7) days. You are required to keep facilities clean and in good working order. Necessities for personal hygiene (at time of admission) and care of living quarters should be furnished. Inspections will be held to insure

2

compliance with cleanliness standards. Keeping living quarters clean is your responsibility and has a direct effect on privileges granted. Your clothing and linen will be laundered each week on a schedule established by the jail administration. You are *NOT* allowed to wash clothing or linen in sinks or showers of the jail or to hang such articles about the cells or dayrooms to dry.

**B.  Detention Facility Property-** Upon admission to this facility, you will be requested to sign a *"PROPERTY AND PERSONAL USE ITEMS ISSUED"* report verifying the conditions of bedding, towels, uniforms and other articles assigned to you which are the property of the jail. You must return them in good condition when you leave. Property assigned to you cannot be transferred to another inmate. You will be required to *PAY* for any damage to the property or equipment of the Tallapoosa County Jail *PRIOR TO BEING RELEASED*. You will also be subject to criminal prosecution.

**C.  Care of Living Quarters-** All inmates are required to keep the quarters in which they live clean and share in cleaning your cellblock. No trash or loose papers are to be left on the floor nor pictures or paper of any kind stuck to the wall at any time. All showers, toilets, and lavatories will be kept in a sanitary condition at all times. Lights are turned on at 5:00 AM and you should begin cleaning no later than 5:30 AM (prior to breakfast). Your beds are to be made up with all linen, uniforms and clothing neatly folded. At the beginning of each day, *your cell will be inspected by a Jail Staff member prior to privileges* (TV, Telephone, etc.) being given to you.

**D.  Conduct-** Gambling, fighting and tobacco use are prohibited. You must obey all Jail Facility rules and follow the Correctional Officers instructions. You must be out of bed and have them made during the hours of 5:30 AM to 5:00 PM. You must conduct yourself in an orderly

3

manner with respect for the rights of staff and
other inmates. If you fail to conduct yourself
properly, you may loose privileges, which are
permitted to inmates in good standing, even to
the point of disciplinary segregation. You are
prohibited from controlling or attempting to
control the actions or behavior of staff or
other inmates by threat, promise, fear, force,
or any other means. You cannot ridicule, tease,
harass or molest staff or any other inmate.

**E.**    **Sleeping on Bunks-Bed-Cots:** The following
shall be followed by the inmates at the
Tallapoosa County Jail concerning sleeping or
Lying in your assigned sleeping area Monday
Saturday:

5:00 am   You will be awakened daily at this time.

5:30 am   Must be out of your assigned sleeping area, fully dressed
and begin cleaning duties. You are allowed only to sit on
your bunk/bed/cot and you shall not sit on a top bunk.

6:00 am   Breakfast is served, continue cleaning.

7:00 am   Lockdown of individual lockdown cells, cleaning shall be
completed.

7:00 am    You shall not go back to sleep or lie down on your
till          bunk/bed/cot. You are allowed only to sit on your
12 noon   bunk/bed/cot and you shall not sit on a top bunk.

12 noon   Lunch is served, individual lockdown cells are unlocked.
You shall be allowed to lie down on your bunk/bed/cot
after you have eaten your lunch.

1:00 pm   Lockdown of individual lockdown cells. You shall not go
till          back to sleep or lie down on your bunk/bed/cot. You are
5:00 pm   allowed only to sit on your bunk/bed/cot and you shall not
sit on a top bunk.

5:00 pm   You may lie down or sleep on your bunk/bed/cot at your
Until        leisure.

If you are caught sleeping or lying down
disciplinary action will be taken against you.

4

# SECTION 4.0

## VIOLATIONS, PENALTIES, HEARINGS

### A. Minor Violations:

1. Acting insulting or disrespectful toward personnel;
2. Lying or providing a false statement to staff;
3. Using abusive language;
4. Participating in unauthorized gathering;
5. Being in an unauthorized area, including another inmates cell;
6. Failure to follow safety or sanitation regulations;
7. Making, possessing, or using intoxicants;
8. Smoking;
9. Gambling;
10. Being unsanitary/untidy; failing to keep one's person or quarters clean;
11. Loaning property or anything of value for profit;
12. Malingering or feigning (faking) an illness;
13. Failure to be fully dressed in a jail issued uniform between the hours of 5:30 AM to 5:00 PM;
14. Failure to be dressed (at a minimum - T-shirt and jail issued uniform pant) after 5:00 PM when outside lockdown cell or sleeping area;
15. Wearing any material, in any way, on the head.
16. Touching fence or tampering with, in any way, the fence on the exercise yard;
17. Unnecessary noise such as arguing, shouting, whistling, rattling or pounding on doors, walls, tables or windows. This includes loud talking or noise after lights out;
18. Tattooing;
19. Attempting to commit, aid another to commit or making plans to commit any of the above offenses;

5

## B.   Major Violations

1. Repeated minor violations;
2. Possessing unauthorized clothing;
3. Burning paper or other material for any reason;
4. Possessing any items not on the approved list of items allowed to inmates (i.e. contraband such as money, cigarettes, lighters, matches, etc.);
5. Writing on the walls, furniture, or other minor damage to Jail Facility property of less than $50.00;
6. Failure to comply with an officers lawful order;
7. Fighting or molesting;
8. Attempting to control other inmates, whether through coercion, force or threat;
9. Indecent exposure;
10. Refusing to provide a urine or breath sample upon request;
11. Giving or offering any official or staff member a bribe or anything of value;
12. Destroying, altering, or damaging Jail Facility property or property of another person;
13. Possessing unauthorized property belonging to another person or the county (stealing);
14. Tampering with or blocking any locking device;
15. Hoarding, selling, or transferring medication issued at the Jail or from any source;
16. Failing to cooperate with headcount or interfering with headcount;
17. Violating promulgated rules or regulations;
18. Disrupting or abusing commissary, visitation, telephone, library, classes or recreational privileges;
19. Disrupting or abusing religious, medical, food distribution or any other Jail Facility activity or program;
20. Stoppage or placement of foreign objects or matter into toilets, showers, sinks or any other drains.

## C. Serious Violations

1. Repeated major violations;
2. Murder;
3. Starting any fire may be considered arson and charged appropriately as specified in Title 13 of the Code of Alabama;
4. Possessing or introducing a gun or other weapon into the jail facility;
5. Rioting or encouraging others to riot;
6. Assault and battery on an inmate and/or personnel;
7. Practicing extortion or blackmail, demanding or receiving anything of value in return for protection against others to avoid bodily harm or under threat of informing;
8. Engaging in sexual acts;
9. Making sexual proposals or threats;
10. Possessing or introducing an explosive, or any object modified to be used as a weapon, chemical agent, or any type of ammunition into the Jail Facility;
11. Possessing, selling, using or introducing into the facility any narcotic, narcotic paraphernalia, drugs, or intoxicants not prescribed for the individual by authorized medical personnel;
12. Violating a condition of furlough, pass or any other conditional or temporary release (i.e. funeral, work, etc);
13. Leaving the Jail Facility without authorization;
14. Violating any Municipal, County, State or Federal Law;
15. Counterfeiting, forging or reproducing without proper authorization any document, article of identification, money, security items or official papers;
16. Acting in a way that disrupts or interferes with security or orderly running of the Jail Facility (i.e. failure to lockdown, not return razors at pickup);
17. Encouraging, facilitating, or otherwise conspiring with others to commit any prohibited act;
18. Escaping, attempting to escape, or planning to escape, including failing to return from

7

a approved community activity in a timely manner;

1. Theft;

2. Damaging Jail Facility property (in excess of $50.00);

3. Attempting to intimidate or actually intimidating or controlling personnel or other individuals whether through coercion, force, or threat; and

4. Interfering with security operations or devices, fire drills, firearms, smoke detectors, blocking or jamming cell doors or cameras.

## D.  Penalties for Violations

1.  For minor violations the inmate may be verbally reprimanded, if it is the opinion of the Correctional Officer that the reprimand should prevent the infraction from happening again. Restriction of privileges may be imposed on an inmate for a period up to 48 hours (two days) for a minor violation.

2.  For major violations the inmate may be denied any or all privileges for a period of time not to exceed 240 hours or ten (10) days and/or be placed in disciplinary housing.

3. For any serious violation the inmate may be denied any or all privileges for a period not to exceed 720 hours or thirty (30) days, will be placed in disciplinary housing, and receive criminal charges if applicable.

4. In addition to any penalty, which may be assessed, the Jail Administrator may reconsider any Inmate Classification.

8

## E.    Disciplinary Procedures

When Staff finds it necessary to charge an inmate with a minor, major or serious violation of the rules of conduct, he/she should comply with the following procedures:

1. Notification of Supervisor;
2. Prepare an "Incident Report" if major or serious violation and "Use of Force Report" if applicable.
3. Advise the inmate of the specific violation/charges.
4. Advise the inmate of his/her rights to a hearing;
5. If the inmate acknowledges he/she has committed the violation and waives the right to a hearing, the Jail Administrator will assess the penalty for the rule violation.
6. If the inmate denies he/she has committed the violation, the Jail Administrator will appoint a three (3) member hearing committee and set a hearing date after the inmate is notified of the charges.
7. The inmate has no right to counsel at the hearing unless the alleged violation is one for which the inmate could also be prosecuted.
8. Inmate has no right to cross-examine witnesses.
9. The inmate has the right to remain silent, but his/her silence may be used by the disciplinary committee against him/her in arriving at a decision.
10. The disciplinary committee shall make a decision without the inmate being present and shall provide a written finding of fact and recommended discipline to the Jail Administrator. The Jail Administrator will then provide the inmate with a written finding of fact and an assessment of discipline.
11. Inmates may appeal, to the Jail Administrator, the decision of the Disciplinary Hearing Committee, in writing within 48 hours of receiving a finding of fact, based upon the following:
     A. Procedural errors
     B. Submission of new evidence;

9

C. Insufficiency of a finding of evidence that proves the accused did not commit the prohibited act; and

D. Prejudice or other appropriate grounds.

An Inmate accused of violating a serious or major infraction may be confined to a lock-down or disciplinary isolation cell pending the hearing, but not to exceed 24 hours unless on a weekend or holiday. If violations occur on a weekend or holiday, the inmate may be held until the next regular working day.

## F. Hearing/Review Rules of Conduct

All inmates must conduct themselves in an appropriate manner during the hearing. Rules of conduct must be adhered to during the hearing/review proceedings as follows:

A. Full uniforms required, worn properly
B. No head wear allowed.
C. Reasonable, civilized behavior is expected;
D. Using abusive language (profanity) is a violation of Jail rules; if you use abusive language at the hearing, you will be removed and the hearing continued in your absence and you may receive additional restriction of privileges for a period of up to five (5) days. If you attempt to intimidate or actually intimidate the Hearing Officer and/or witnesses, you will be removed and the hearing continued in your absence, and you may be denied any and all privileges for a period of thirty (30) days, placed in a disciplinary isolation cell and/or receive additional criminal charges.

# SECTION 5.0

## Inmate Privileges

### A.   Program Services:

- Educational Classes is made available by the Tallapoosa County Board of Education for those inmates who have not graduated high school and are under the legal age or requirement to do so.

- GED Classes is offered on a voluntary basis. There are limitations on class size (10 per session) so it is done on a first come first serve basis. The approval for you to attend is also based on your behavior.

- Library use is a privilege available weekly to work on your current case pending. You should submit a request to the shift supervisor.

- Work Detail/Community Service is a privilege offered to inmates that have shown good behavior and meet the selection criteria to serve as an Inmate Worker. Inmates selected for Work Detail/Community Service shall be selected by the Jail Administrator with the recommendations from the jail staff and Correctional Officers.

- Inmate Workers shall be selected by the Jail Administrator with the recommendations from the jail staff and Correctional Officers. It is a privilege offered to inmates who meet the selection criteria. Inmate Workers must have and continue to display a positive attitude.

- Work Release Program. Inmates selected for approved work release must be first ordered by the presiding judge in your case.  Once this order is issued it is your *RESPONSIBILITY* to notify your employer or locate an employer to hire you.  The employer must then agree to certain conditions of the Tallapoosa County Jail Work Release Program contract.

### B. Religious and other Services: Selected lay ministers have been approved to visit with each cell on a weekly basis. All qualified ministers of

11

any faith may make arrangements to counsel any inmate by having them contact the shift supervisor who will be on duty at the time of visit or by contacting the Jail Administrator.

**C. Commissary:** Inmates are allowed to purchase snacks, drinks, hygiene items etc. Commissary sheets are collected on MONDAY EVENINGS and every attempt will be made to issue Commissary once a week. Money must be in your account prior to 2:00 PM Monday. All sales are final and no refunds after you leave the store. Inspect your items at time of purchase. Any disorderly actions (talking, banging on windows, out of line, etc.) while being escorted to commissary will result in the loss of your privilege.

*THE TALLAPOOSA COUNTY JAIL DOES NOT PROVIDE FREE HYGIENE ITEMS TO ALL INMATES. INMATES WHO ARE NOT CLASSIFIED INDIGENT\* WILL BE EXPECTED TO PURCHASE HYGIENE ITEMS FROM THE COMMISSARY.*

*\*INDIGENT-impoverished or lack of financial resources*

## Indigent Hygiene Pack Qualifications:

1. Inmate must not have more than $2.00 in their commissary account and not have received commissary for the previous 30 days.
2. Inmate must be in indigent status to request qualification for Hygiene Pack (except new admissions).
3. Inmates wishing to request an Indigent Hygiene Pack will submit an "INMATE REQUEST FORM" to the Jail Administrator. The Administrative Assistant will determine if you qualify and authorize them to be issued. This pack will contain bath soap, and toothpaste only. Tooth brushes will be given out on a monthly basis.

## D.    **Laundry Change Out Schedule:** (Subject to Change)

1.  MONDAY-A & B Block clothing only
2.  TUESDAY-C Block clothing only
3.  WEDNESDAY-A & B Block linen only
4.  THURSDAY-C Block linen only
5.  FRIDAY-A & B Block clothing only
6.  SATURDAY-C Block clothing only
7.  SUNDAY-A,B,& C Block - Blankets

The items scheduled for washing must be ready for pick-up by 6:00 A.M. or they will not be washed. (Bagged and ready to be put out)

## E. Phone Calls and Mail

**PHONES**-During the initial booking process, you will be allowed to call a person of your choice. This will be the only time you will be allowed to use a phone outside your cell. Each cell is equipped with a phone designed to make "COLLECT CALLS" only. This privilege will be made available to you between the hours of 8:00 AM and 9:00 PM.

*FOR SECURITY PURPOSES, INMATE PHONES ARE RANDOMLY MONITORED AND/OR RECORDED.   THIS IS THE ONLY NOTICE YOU WILL RECEIVE ON THIS ISSUE.*

**MAIL**-All incoming and outgoing mail must include the inmate's name, and complete address. All return address must show a name (sender and receiver). No other writing or designs or figures shall be allowed and shall be returned to you or returned to sender. The following is a sample of your address:

> *Inmates Name*
> *Tallapoosa county Jail*
> *316 Industrial Park Drive*
> *Dadeville, Alabama 36853*

Any material received in the mail, which advocates violence or disruption of the security of this facility, which encourages criminal or sexual behavior, or which advocates racial, religious or national hatred that could cause danger of violence in the jail will be confiscated. If there is any question regarding

13

acceptability of materials, the Jail Administrator will make the final decision. <u>It is your responsibility to notify your friends and family members of items not allowed to you by use/way of the mail. Items mailed to you that you are not authorized to have shall be confiscated and donated to a company or organization of our own choosing. IT WILL NOT BE PLACED INTO YOUR PROPERTY.</u>

*General correspondence* (non-privileged) will be opened and examined by jail staff prior to delivery to the inmate. It will be scanned to determine if it contains any evidence of threat to public safety or threat to the security, order and safety of the jail facility.
Any rejected or confiscated mail will be forwarded to the Jail Administrator with a 'MAIL CONFISCATION REPORT" stating why it was rejected. He will make the determination on what action will be taken. All outgoing mail must be given to the jail staff <u>UNSEALED</u> so it can be inspected for contraband or other unauthorized/illegal contents. Rejected outgoing mail will be returned to inmate.

*Legal mail* from the courts, clerks or attorneys is considered privileged and will be opened in your presence for inspection. Legal Mail will <u>not</u> be read by Correctional Officers. Out going <u>may</u> be sealed in the presence of a correctional officer after inspection.

*Prisoner-to-Prisoner mail* Because of legitimate penological interest, Prisoner-to-Prisoner (from any facility) mail is prohibited.
*Prohibited* Packages, newspapers, magazines or photos, which are suggestive or pornographic in nature, or promote violence or hatred, will be "returned to sender" as *UNAUTHORIZED*.

## F.   Reading Materials

You are authorized to keep jail issued books, two (2) soft back books at one time, and one religious book (no more than 5"x8", soft back only) in your cell. You will not be permitted to store excess

amounts of papers or books that may cause a potential fire hazard. No more than five (5) personal letters, five (5) pictures and five (5) legal letters will be authorized in your custody. All others must be mailed out of the facility or destroyed. <u>Only legal mail will be placed in your property.</u>

## G.  Visitation

Non-public visitors (attorneys, court officials, ministers, etc.) may see inmates Monday-Friday from 8:00 AM to 11:00 AM. and from 1:30 PM. to 4:30 PM. Non-public visitors may have special visits by contacting the shift supervisor on duty or the Jail Administrator. Public and any other Special Visit requests require direct approval from the Jail Administrator, Sheriff or Chief Deputy only.

1. Saturday and Sunday are designated as visitation day. Visitation days and time will be assigned to inmates according to his last name in alphabetical order and will last thirty (30) minutes. The time will remain the same during your stay at the jail. Saturday is for those last names that begin with "A" through "K" and Sunday are for those last names that begin with "L" through "Z". *IT IS YOUR RESPONSIBILITY TO NOTIFY YOUR VISITORS OF THE DAY AND TIME OF YOUR SCHEDULE AND WHAT IS REQUIRED OF THEM.*

2. Each inmate is allowed to submit five (5) names on their "VISITATION ROSTER" for visitation. All inmates serving more than forty-eight (48) hours and booked into the jail before 9:00 AM. on Thursday, will be allowed visitors on the up coming weekend. These names will remain and no changes or additions can be made to your roster for ninety (90) days.

3. All visitors must be present at the same time and anyone 16 years of age or older <u>MUST</u> produce a photo identification, unless they are a dependant child in order to be registered for visitation. Dependant children will not be required to be listed on the roster or sign-in

15

however, they must be accompanied by an adult that is registered.

4. Registration will begin fifteen minutes (15) minutes prior to scheduled visitation hours. Visits will be done only at the times set.

5. Inmates must be fully dressed before being moved to the visiting area. Vulgar language and/or gestures you may direct towards anyone during visitation periods are a violation of the rules and will result in disciplinary action. Loitering on the way to or from or failure to leave the visiting area when notified will also result in a disciplinary.

6. Visitation may be denied to any person if the visitor or inmate fails to comply with the visitation rules or when there is reason to believe the visit may not be in the best interest of the security and welfare of the jail.

7. Visitors must be appropriately dressed to attend visitation. The following attire is considered to be inappropriate, and your visitors will not be allowed to attend:

Sleeveless Shirts or Blouse
Shirts or Blouse that expose the waist line
Low cut Shirts or Blouse
Shorts of any kind
Screen Printed Shirts or Pants that depict the following:

| | |
|---|---|
| Violence or Nudity | Vulgarity |
| Criminal Behavior | Racism |

You should contact your family members that intend to visit you and make them aware of these rules.

## H.   Televisions

The viewing of televisions is a privilege that can be suspended, revoked for extended periods of time, or permanently removed from a cell. Any television that has been rendered unsafe, because of tampering, will be removed permanently. Televisions are turned on at 7AM and turned off at 10PM daily.

16

## I.    Games

Games (cards, checkers, chess, etc.) can be utilized between the hours of 6:00 AM through 10:00 PM. provided privileges have been granted. They are subject to removal if the players or cell become too loud or rowdy. At a designated time all games will be removed from the cell. Failure to comply will result in disciplinary action and/or this privilege being suspended or revoked.

## J.    Inmate Workers

The Jail Administrator, upon recommendation of shift supervisors, will select certain inmates periodically to serve as "TRUSTEES" or "WORK DETAIL INMATES". The selection is based on the inmate's criminal charge, behavior while in jail and ability to adequately perform the designated task. Selection is done <u>strictly by recommendation of the staff</u>. Written requests will be discarded and constant verbal request will prevent your selection. In other words, don't ask.

1. Behavior not consistent with inmate rules or regulations, or bringing contraband into the facility, etc. will result in you being removed from this status.
2. All Inmate Workers shall eat in their cell at the designated feeding times.
3. Hall workers shall return to their cell when their work is completed. You will be called out on an as needed basis.
4. You shall remain in your assigned work areas only.
5. All workers who leave the confines of this facility will be completely searched upon their return.

# K. Work Detail/Community Service Rules

If you are assigned to a work detail, the following rules must be followed if you are to remain on this assignment. Violations will result in immediate lockdown and possible criminal charges or rule violation charges brought against you.

1. Before you leave the jail facility for your work assignment you are to have your bunk made and all your personal and jail issued items arranged in a neat manner. You will also assist others in your cell to clean on a daily basis prior to leaving for your assignment.

2. You are to remain clean shaven and have a good appearance to remain on work detail.

3. You are to address all staff members and your detail supervisor as "Sir".

4. You must wear a <u>complete</u> uniform (jail shirt and pants) at all times while on work detail. No exceptions. You must wear or use all safety equipment issued to you for your work assignment.

5. You are not authorized to drive a vehicle or have keys to vehicles in your possession.

6. You are to remain on your assigned detail unless a supervisor changes your assignment. Inmates are not allowed to make substitutions or changes in assignments.

7. Alcoholic beverages and drugs are prohibited.

8. You are not to have visitors at your assigned job sites.

9. Do not make contact with any public officials in an attempt to get help on your case.

10. When you are returned to the jail at the end of your daily assignment, you are to immediately re-enter the jail. You are not authorized to enter any outside storage buildings; the outside worker will secure any of your property that can not enter the jail.

11. Nothing is to be brought back into the jail that was not issued to you by the jail. Don't ask. "I forgot" is not an excuse.

12. Telephone use prohibited outside the facility.

inmate's release will be deposited into the Tallapoosa County Jail Commissary Fund.

## C. Escape and Contraband

Any inmate who escapes (includes walking off work detail), attempts to escape, assists another to escape or is responsible for bringing into the Jail Facility any weapon, saws, tools, narcotic drugs, alcohol, hallucinogenic substances, or any item not approved by the Jail Facility will be prosecuted as provided by law.

## D. Grievance

All inmates are entitled to voice any grievance. Grievances cannot be filed as a group. Only the inmate with the grievance can file. A "GRIEVANCE FORM" can be requested from any correctional officer or Nurse. When completed (include your NID#) return it to the staff officer and You will receive a reply in a reasonable amount of time. You may appeal the decision or action in writing to the Jail Administrator of Tallapoosa County within seventy-two (72) hours of the return receipt. You may appeal this decision or action in writing to the Chief Deputy within Seventy two (72) hours of the return receipt. The final step of the appeal process will be to the Sheriff if written notice is given within seventy two (72) hours of receipt from the Chief Deputy.

## E. Food

You will be served three (3) meals a day at regular intervals. The food will be wholesome and nutritional. Since food is expensive, you must not waste it. The menus meet recommended dietary allowances of "Local Health Code Standards". Any abuse of food, food trays, utensils or failure to return all trays and accessories (forks, cups, etc.) when requested by Jail Staff will result in disciplinary action taken against one or all inmates in that cell block.

## F. Medical Services

Reasonable and customary medical treatment is available to inmates. Limited dental treatment is also available. You should have an opportunity to report illnesses daily through the "INMATE REQUEST FORM" or by use of a Medical Request/Charge Sheet. Any inmate may refuse, in writing, health treatment and care; however, inmates must do so in the presence of health care staff.

### Medical Charges to Inmates-

All inmates will be charged a co-payment fee for all self initiated non-emergency medical services. However, no inmate will ever be denied medical services because of their inability to pay. There will be no additional fee when a health care provider recommends an inmate's return for further treatment of the same complaint. <u>All fees will be deducted from the inmates Commissary Account</u> and forwarded to the Tallapoosa County Commission as reimbursement.

Inmates involved in an altercation that results in injury to another inmate or officer will be charged a medical fee for the injured inmate's or Officer's medical treatment.

In the event an inmate has no funds or only partial funds in his/her account, the account will be placed into a negative balance. When the inmate later receives funds, the total remaining fees will be deducted from the inmates account.

Upon release from this facility, any unpaid medical fee balance will reflect a debit on the inmate's account for three (3) years from the date of release. If re-incarcerated during this time, that debt will be deducted from any future funds then deposited in that inmates account.

**CO-PAYMENT FEE SCHEDULE:**

1. Emergency Room visits initiated by the inmate and are not preexisting-----------------------$15.00
2. Nurse visit (requested)---------------------$ 5.00
3. Doctor visit (requested)-------------------$15.00
4. Dentist Visit------------------------------$20.00
5. Prescription or prescribed medication------$ 5.00
6. Over the counter medication----------------$  .25

## G.   Lock-downs

This facility maintains complete security lock-down of all inmates from 10:00 PM to 6:00 AM seven days per week and at other times as needed for special security reasons.

Besides the routine lockdowns at night, there are times when security/emergency situations dictate additional needs for inmate lockdowns. *Therefore it is necessary that all inmates, at all times, immediately obey orders to lockdown.*

Inmates of any cell block that refuses to lockdown immediately upon order to do so will cause that cell to go on 24 hour DISCIPLINARY LOCKDOWN, and loss of <u>all</u> inmate privileges for 24 hours.

## H.  Intercoms

Each cell is equipped with an intercom, which gives inmates direct communications with the Control Room for emergencies. Abuse of this device (i.e. time, when do I go to Court, weather, asking for specific officers, etc.) will result in cell loss of privileges.

## I.   Lights Out

Lights are turned out by the jail Staff at 10:00 P.M. This means that you are expected to be quiet so that everyone can sleep.

22

## J. Authorized Property

The property listed below is the only items allowed in cells:

| ITEMS | MEN | WOMEN | WORK RELEASE |
|---|---|---|---|
| 4 PAIR WHITE UNDERWEAR | YES | YES | YES |
| 4 PAIR WHITE T-SHIRT | YES | YES | YES |
| 4 PAIR WHITE SOCKS | YES | YES | YES |
| 1 WEDDING BAND (NO STONE) | YES | YES | YES |
| 1 WATCH (less than $25.00) | YES | YES | YES |
| 1 PLASTIC COMB | YES | YES | YES |
| 1 BAR OF SOAP | YES | YES | YES |
| 1 DEODORANT | YES | YES | YES |
| 1 TOOTHPASTE & TOOTHBRUSH | YES | YES | YES |
| 1 PAIR THERMALS (WINTER) | YES | YES | YES |
| 4 BRAS (NO UNDER WIRE) | NO | YES | NO |
| 4 SETS WORK CLOTHS | NO | NO | YES |
| 6 PAIR WHITE UNDERWEAR | NO | NO | YES |
| 6 PAIR WHITE SOCKS | NO | NO | YES |
| 6 WHITE TEE SHIRTS | NO | NO | YES |
| 1 PAIR TENNIS SHOES/BOOTS | NO | NO | YES |
| ALL JAIL ISSUED ITEMS | YES | YES | YES |
| 1 BIBLE | YES | YES | YES |

*Note: Bibles must be requested by using the Inmate Request Form and one will be issued to you in a reasonable amount of time.

## K. Inmate Request

Inmate requests are required to be in writing on an "INMATE REQUEST FORM" which can be obtained from the medical cart daily. This form must be filled out completely (include NID#) and briefly outline your request. Supervisors will review all request and you will receive a reply to that request in a reasonable amount of time.

## L. Alcohol/Drug Screen

Inmates that are participating in work details and inmate workers and/or the general population that has been allowed temporary release shall be tested for alcohol and drugs at random by use of a breathalyzer and urinalysis at the direction of the Jail Administrator. Alcohol/Drug Screen may be court ordered but is not necessary to promote discipline and the enforcement of rules.

## M.  Marriage

Inmates will not be allowed to be married while incarcerated at the Tallapoosa County Jail.

## N.  Headcounts

Headcounts will be performed several times a day and you are required to stand by your bunk/bed or stand by the door of your assigned lock down cell until the headcount has been conducted.

## O.  Promulgated Rules

It is impossible to write every rule pertaining to the operation of this facility and to include everything that is expected of you. From time to time, when needed, verbal directives will be given to you for short-term solutions. The Sheriff or Jail Administrator may promulgate additional rules, in writing, for long-term solutions and subsequently added to this manual when it is reprinted.

# Exhibit E
# Affidavit of Cathy DuBose

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CORNELIUS MILNER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3:07-cv-00152-WHA-SRW |
| | ) |
| TALLAPOOSA COUNTY JAIL, et al., | ) |
| | ) |
|     Defendants. | ) |

### AFFIDAVIT OF CATHY DUBOSE

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF TALLAPOOSA | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Cathy Dubose, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Cathy DuBose. I am over the age of nineteen and competent to make this affidavit. I have personal knowledge of the matters set forth in this affidavit.

2.    I am a registered nurse. I provide medical services to the inmates at the Tallapoosa County Jail and have done so since January 25, 2005. I earned my Nursing degree from Southern Union in 1990. Prior to working at the Jail, I was employed by Southern Care Hospice for two years as a RN Case Manager. Prior to that, I worked at Russell Medical Center for six years as a Staff Nurse RN.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      I perform a physical exam of each inmate shortly after they are brought into the Tallapoosa County Jail. As part of this exam a blood sample from the inmate is drawn which is tested for HIV/AIDS and syphilis.

5.      AIDS is most typically transmitted from one person to another by way of sexual contact, blood transfusions, or the shared use of intravenous drug needles or tattooing needles.

6.      Staph infections are caused by very common bacteria that many people have living on their skin all the time. It can enter the body through an open cut or break in the skin and cause an infection. Once a person has the bacteria responsible for a staph infection inside their body, the bacteria never goes away. However, the symptoms of a staph infection come and go with the treatment of antibiotics. Staph infections tend to be minor skin infections that are pus-producing.

7.      The chances are low of an inmate contracting a staph infection from a cellmate infected with the bacteria responsible for causing a staph infection. In order to contract a staph infection from an infected person, the uninfected inmate would have to have an area of broken skin make direct contact with the infected area on the infected inmate. A staph infection is not an airborne disease.

8.      Inmates at the Tallapoosa County Jail who are infected with a staph infection receive appropriate medical treatment from the jail medical staff. If an inmate is diagnosed with a staph infection, the inmate would receive dressings and bandages to cover the wound and would be placed on an antibiotic until the infection cleared up.

9.      Plaintiff has never requested medical care due to his fear of having contracted the AIDS virus or a staph infection.

2

10.    I never received a grievance from the Plaintiff regarding the incident made the basis of this Complaint.

11.    I swear to the best of my present knowledge and information that the above statements are true; that I am competent to make this affidavit; and, the above statements are made by drawing from my personal knowledge of the situation.

_Cathy DuBose_

CATHY DUBOSE

**SWORN TO** and **SUBSCRIBED** before me this _11_ day of May, 2007.



_Marianne Adams_

NOTARY PUBLIC

My Commission Expires: MY COMMISSION EXPIRES JULY 16, 2008

3